**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 19, 2011

No. 10-30854

Lyle W. Cayce
Clerk

ROMMEL E. GRIFFIN, SR.,

Plaintiff-Appellant

v.

UNITED PARCEL SERVICE, INCORPORATED,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District Of Louisiana

Before JONES, Chief Judge, STEWART and SOUTHWICK, Circuit Judges.
CARL E. STEWART, Circuit Judge:

Plaintiff-Appellant, Rommel E. Griffin, Sr., brought suit under the Americans with Disabilities Act (ADA) against Defendant-Appellee, United Parcel Service (UPS), for failing to provide a reasonable employment accommodation in consideration of his diabetes. The district court entered summary judgment in favor of UPS. As Griffin is not disabled within the meaning of the ADA, and as UPS did not refuse to provide a reasonable accommodation of a known limitation of Griffin's condition, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Griffin, an insulin-dependent Type-II diabetic, was an employee of UPS for nearly twenty-eight years, from March 1978 until he retired on December 1,

No. 10-30854

2006. For most of his career at UPS, Griffin worked in a supervisory or managerial capacity. Griffin's most recent position at UPS was twilight hub manager of the Morrison Road Center in New Orleans, Louisiana. The "twilight" position required Griffin to work from approximately 2:00 p.m. until 10:00 p.m. five days per week.

Following Hurricane Katrina, Griffin began to experience unusual numbness and pain, which his doctor attributed to stress. In March 2006, Griffin took a medical leave of absence from UPS and attended an outpatient counseling program at the West Jefferson Behavioral Medicine Center. During this period, Griffin received the same salary and benefits that he had received prior to his leave of absence. As a result of the counseling program, Griffin was able to better manage his stress, and his stress-related symptoms improved.

Griffin was released to return to work on June 21, 2006. By way of a letter, the Behavioral Medicine Center recommended that Griffin be acclimated back to work on a part-time schedule and resume a full-time schedule on the third week following his return to work.

Upon his return to UPS, Griffin was informed that his former position of twilight hub manager had been filled. Gerald Barnes, then the employee relations manager, told Griffin that he had requested a transfer to Atlanta, and suggested that Griffin apply for his job. In late June, Griffin approached Roman Williams, the district human resource manager, about the employee relations manager position, but was informed that the position had been filled. In August 2006, Williams recommended to Griffin the position of training manager, a newly-created position then under consideration. Griffin and Williams then met with Alan Rundle, the operations manager, who informed them that the proposed training manager position was not in the cost budget. Rundle then assigned Griffin to the available midnight hub manager position. This position would have required Griffin to work overnight hours.

No. 10-30854

On August 24, 2006, Griffin delivered a letter, which included "Accommodation Request" in the subject line, to Williams and Geraldine L. Haydon, health management manager, stating that his doctors required that his schedule be adjusted to daytime working hours in order to accommodate his diabetes. On September 20, 2006, Sherry A. Anderson, district workforce planning manager, notified Griffin by letter that he and his physician must complete medical forms within four weeks so that UPS could assess his accommodation request.

On November 13, 2006, Plaintiff wrote a letter to Haydon, which stated, in part, "My diabetes is a condition that does not have to be a disability if I manage it properly, but to do so I will need UPS to make the accommodation to permit me to work days." Attached to this letter were reports and forms from his doctors. Dr. R. Fridge Cameron's plan notes regarding Griffin's discharge from the Behavioral Medicine Center, dated June 20, 2006, stated that Griffin would be best served by working day hours, as this would help him control his diabetes. However, Dr. Cameron, in his completed medical form, dated November 6, 2006, answered "No" to a question asking whether Griffin's impairments substantially limited his ability to perform any major life activities other than working. A note from Dr. Tina K. Thethi, dated November 7, 2006, stated that Griffin would be in a better position to follow his therapeutic diabetes regimen if he worked morning hours.

Thereafter, by way of a letter dated November 16, 2006, Anderson notified Griffin that his accommodation request was being denied because, based upon the information provided, UPS was unable to conclude that he was eligible for a reasonable accommodation under the Americans with Disabilities Act. Subsequently, Griffin replied to Anderson, via a letter dated December 1, 2006, and announced his retirement from UPS. Griffin never made any complaints to

3

No. 10-30854

the regional human resources department, and did not participate in the formal employee dispute resolution program.

On or about May 22, 2007, Griffin filed a charge of discrimination with the Equal Employment Opportunity Commission. The EEOC failed to timely investigate the charge, and issued Griffin a Notice of the Right to Sue. On April 28, 2008, Griffin filed his complaint, asserting a claim that UPS failed to provide a reasonable accommodation as required by the ADA, as well as claims for age and race discrimination which were disposed of separately and are not at issue in this appeal. On August 5, 2010, the district court granted summary judgment in favor of UPS on the ADA claim, having determined, *inter alia*, that Griffin was not disabled within the meaning of the ADA. Griffin appealed.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the trial court. *See Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 205 (5th Cir. 1998). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). "Even if we do not agree with the reasons given by the district court to support summary judgment, we may affirm the district court's ruling on any grounds supported by the record." *Lifecare Hosps., Inc. v. Health Plus, Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

## III. DISCUSSION

### A. Disability

The ADA, 42 U.S.C. §§ 12102 *et seq.*, prohibits discrimination in employment against a qualified individual on the basis of his disability. The

4

parties acknowledge that under our established precedent, the settled interpretation of the ADA prior to the ADA Amendments Act of 2008, 122 Stat. 3553, governs the resolution of this case. *See Carmona v. Sw. Airlines Co.*, 604 F.3d 848 (5th Cir. 2010).

To prevail on his ADA claim, Griffin must establish that 1) he has a disability; 2) he is qualified for the position in which he seeks employment; and 3) he was discriminated against because of his disability. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

"'As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability.'" *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (quoting *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996)). A disability is "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]" 29 C.F.R. § 1630.2(g).

In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), the Supreme Court instructed that courts are to make an individualized determination of whether an employee's impairment constitutes a disability, taking into consideration measures taken by the employee to mitigate the effects of the impairment. In so doing, the Court explained that a contrary interpretation of the ADA

> would almost certainly find all diabetics to be disabled, because if they failed to monitor their blood sugar levels and administer insulin, they would almost certainly be substantially limited in one or more major life activities. A diabetic whose illness does not

impair his or her daily activities would therefore be considered disabled simply because he or she has diabetes. Thus, the [contrary] approach would create a system in which persons often must be treated as members of a group of people with similar impairments, rather than as individuals.

*Sutton*, 527 U.S. at 483. Accordingly, under *Sutton*, the ADA requires a case-by-case determination of the nature of the employee's impairment. "An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 199 (2002).

In this case, Griffin asserts that his diabetic condition substantially limits his major life activity of eating. "Major life activities refer to those activities that are of central importance to most people's everyday lives." *Jenkins*, 487 F.3d at 315. It is established in this circuit that eating is a major life activity. *Waldrip*, 325 F.3d at 655. Additionally, it is clear that diabetes, a disease affecting the digestive, hemic, and endocrine systems, is a physical impairment under the ADA. *See Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003). Accordingly, the remaining question is whether Griffin's diabetic condition substantially limited his eating.

Griffin was diagnosed with diabetes in approximately 1997. He was initially able to manage his diabetes without medication, but, in 2004, he was prescribed injectable insulin and medication, in addition to his routine of diet and exercise. Griffin testified in his deposition that when his blood sugar drops, he begins to perspire and must eat a meal. However, as long as he sticks to his regimen of medication, meals, and rest, his diabetes is manageable. Griffin further testified that the primary restrictions with regard to his diet are to control his portion size, and to refrain from eating fatty, sugary, or otherwise unhealthy foods. Griffin acknowledged that he occasionally indulges in small portions of fried food without significant impact on his overall health. In an

No. 10-30854

affidavit, Griffin stated that he must constantly monitor what and how much he eats, and should eat on a consistent schedule.

Dr. Tilak K. Mallik, who treated Griffin, testified in his deposition that Griffin's diet required "proportion control" and "not tak[ing] quick sugar-containing food." Referring to his notes, Dr. Mallik was not aware of any requirement that Griffin must work only during daytime hours in order to maintain his dietary regimen. Dr. Cameron, Griffin's primary physician, testified in his deposition that Griffin's dietary regimen could be maintained even if he worked on a nighttime schedule.

"The analysis of when and under what conditions diabetes is considered a disability for ADA purposes is a matter of degree." *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 34 (1st Cir. 2010) (internal quotation marks and citation omitted). In addition to his once-daily insulin shot and medication, Griffin's diabetic condition requires only modest adjustments to his diet. Griffin acknowledged that even when he makes mild deviations from his dietary plan, the consequences are not imminently dangerous, and may be corrected by simply eating more or less.

Griffin would have us conclude that, because diabetes can, as a general matter, be a restrictive and debilitating condition, and Griffin could, if he did not follow his dietary regimen, suffer serious health consequences, Griffin's diabetes amounts to a disability under the ADA. This proposed analysis is directly contrary to *Sutton*, because it relies on hypothetical generalizations rather than an individualized inquiry, and it fails to take into account the admittedly modest dietary measures Griffin must take to mitigate the effects of his condition. "To so hold would be to recognize all persons with diabetes, lactose intolerance, food allergies, and various other eating-related impairments as disabled." *Walker v. City of Vicksburg*, No. 5:06-cv-60-DCB-JMR, 2007 WL 3245169, at *8 (S.D. Miss. 2007).

No. 10-30854

"[N]either the Supreme Court nor this court has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies." *Waldrip*, 325 F.3d at 656. Griffin's restrictions on what and how much to eat are at the moderate end of the diabetes spectrum and do not amount to a significant restriction on his eating. Accordingly, this case is closely analogous to those in which our sister circuits have concluded that modest dietary restrictions concomitant with an employee's diabetic condition do not amount to substantial limitations under the ADA. *See Carreras*, 596 F.3d at 34 ("Proof that a medical condition requires medication, a fixed meal schedule, [and] timely snack breaks, without more, does not amount to a 'substantial limitation' under the ADA." (internal quotation marks and citation omitted)); *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1156 (11th Cir. 2005) ("Many people have to monitor their food intake for health and lifestyle reasons, and avoiding 'mostly sugars' is not 'significantly restricted' for this purpose. If it were, all insulin-dependent diabetics would have a 'disability' for ADA purposes, and we know from *Sutton* that they do not."); *but see Fraser*, 342 F.3d at 1041 ("We must carefully separate those who have simple dietary restrictions from those who are truly disabled. At the same time, we must permit those who are disabled because of severe dietary restrictions to enjoy the protections of the ADA.").

As Griffin's diabetes treatment regimen requires only modest dietary and lifestyle changes, no genuine issue exists as to whether his impairment substantially limits his eating. Accordingly, the district court properly concluded that Griffin is not disabled within the meaning of the ADA.

B. Reasonable Accommodation

Even assuming that Griffin is disabled within the meaning of the ADA, no reasonable jury could find that UPS failed to reasonably accommodate Griffin's

known disability. Under the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability. "An employee who needs an accommodation because of a disability has the responsibility of informing her employer." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). "This court has recognized that 'where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" *Id.* (quoting *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996)). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009).

"The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Id.* "The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins*, 487 F.3d at 315. "A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously." *Id.* at 316. "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). However, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." *Id.*

In the present case, Griffin objects to having been assigned the position of midnight hub manager, because the position would have required him to work an overnight shift. However, at the time that he was assigned this position, the

only direction that UPS had received regarding Griffin's schedule was a letter from the West Jefferson Behavioral Medicine Center, which advised that Griffin should be eased back into full-time work over the course of three weeks. This letter made no mention of a restriction on overnight hours. At the time of the assignment, UPS had no reason to be aware of such a restriction on the basis of Griffin's diabetes, as his prior medical leave of absence was attributed to stress.

After Griffin objected to the assignment and requested the accommodation that he work only daytime hours, UPS responded to him by letter requesting additional information and asking that he submit his medical forms within four weeks so that it could process his request. Nearly two months later, Griffin responded with a letter stating that his diabetes does not have to be a disability if managed properly. Enclosed with the letter were reports and notes from his doctors. None of the doctors reported that working the day shift was necessary for the management of Griffin's diabetes; rather, they suggested that a daytime shift would be preferable. Moreover, Dr. Cameron responded that Griffin was not substantially limited in the ability to perform any major life activity. Thereafter, a district manager notified Griffin by letter that, based on the information he provided, she was not able to conclude that he was entitled to the requested accommodation under the ADA. Approximately two weeks later, Griffin retired from UPS.

There is simply no evidence that UPS was unwilling to engage in a good-faith, interactive process with Griffin regarding his request for a reasonable accommodation. None of the information Griffin provided UPS indicated that his requested accommodation was necessary for the management of his diabetes. Rather than providing additional information about his illness or requesting that UPS reconsider its decision, Griffin retired on his own accord a short time later. Where an employee terminates the interactive process by voluntarily retiring, it is difficult to discern what measures may have been taken had

accommodation discussions continued.  *See Loulseged*, 178 F.3d at 734 ("It is difficult to judge the reasonableness of accommodations when the employee withdraws before we can say with any authority what these accommodations would have been."); *Agro Distrib.*, 555 F.3d at 471 ("The reasonable accommodation analysis is hindered because [the plaintiff] did not show up for work. Any discussion of the accommodations that might have been provided or denied is mere speculation.").  Griffin also failed to identify an available position that he should have received instead.  Based upon the record evidence, no reasonable juror could conclude that UPS was unwilling to, in good faith, participate in an interactive process to reasonably accommodate Griffin's needs.

## IV. CONCLUSION

For the reasons expressed above, there is no genuine issue of material fact as to whether Griffin's diabetes amounted to a disability within the meaning of the ADA, or whether UPS failed to reasonably accommodate a known limitation of his condition.  Summary judgment in favor of UPS was thus appropriate. Accordingly, the judgment is AFFIRMED.