# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20471

United States Court of Appeals
Fifth Circuit

**FILED**

May 26, 2016

Lyle W. Cayce
Clerk

DANNY J. DELAVAL,

> Plaintiff - Appellant

v.

PTECH DRILLING TUBULARS, L.L.C.,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Danny Delaval filed this lawsuit against PTech Drilling Tubulars, LLC, claiming the company violated the Americans with Disabilities Act in terminating his employment. The district court granted summary judgment in PTech's favor. We AFFIRM.

## FACTS AND PROCEDURAL BACKGROUND

PTech Drilling Tubulars, LLC, is a small company that "operates machine shop facilities specializing in oilfield drilling pipe." In 2009, PTech's predecessor hired Danny Delaval as a manual machinist at its Conroe, Texas facility. Delaval was briefly promoted to shop manager in mid-2013, but was demoted several months later to his previous position after receiving

disciplinary warnings for failure to properly manage employees.

In early March 2014, Delaval told supervisor Jesse Edwards that his health was suffering and that he needed to undergo medical testing. On Friday, March 14, Delaval and Murray Dallas, a PTech owner, exchanged e-mails regarding Delaval's conversation with Edwards. Delaval told Dallas that he was going to the doctor on Monday, March 17, and that he would "need to use any days, or vacation time [he had] available." Dallas responded that Delaval needed to "get some rest and get back to the Doc on Monday so he can get you the proper treatment."

On Tuesday, March 18, Delaval e-mailed again to let Dallas know that Delaval was "cancer free" but had been diagnosed with kidney stones and an enlarged spleen. Delaval told Dallas that Delaval hoped he would "be back at work soon." Dallas responded that he needed to "follow doctor[']s orders" and to keep the company "informed as to what [n]eeds to be done." Dallas told Delaval that he was leaving the country and would not have cell access until April 1.

Delaval finally returned to work on Tuesday, March 25. The parties dispute whether Delaval communicated with anyone at PTech, aside from Dallas, while he was absent. In his deposition, Delaval testified that he was in constant contact with supervisor Chris Trimble and office manager April Grayson. When pressed about conversations on specific dates, though, Delaval waffled, providing that he was not sure that he was in communication with anyone "on a daily basis." Edwards testified that at least one supervisor, Trimble, attempted to contact Delaval when he was absent but Delaval never responded. Edwards also testified that he asked Delaval for a doctor's note corroborating his excuse for his absences, but Delaval never provided any documentation. Delaval testified, however, that he provided all relevant medical documentation to Grayson. The record contains only one medical

No. 15-20471

document, a diagnosis dated about one month after Delaval was fired.

On March 27, PTech fired Delaval for violating its attendance policy, which lists "failing to show up at work for more than three . . . consecutive days without notifying a supervisor" as grounds for immediate dismissal. After exhausting his administrative remedies, Delaval filed this lawsuit alleging violations of the Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act, and Chapter 21 of the Texas Labor Code. PTech moved for summary judgment on Delaval's ADA disability and age discrimination claims, which the district court granted. The district court also *sua sponte* granted summary judgment for PTech on Delaval's ADA failure-to-accommodate claim. Delaval timely appealed his ADA claims only.[1]

## DISCUSSION

Summary judgment is reviewed *de novo* and is proper "if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute of material fact exists and summary judgment is precluded. *Id.* Facts and evidence are viewed "in the light most favorable to the non-moving party." *Id.*

## I. *Disability Discrimination*

We first examine Delaval's contention that PTech violated the ADA by

---

[1] In his brief, Delaval stated that he was abandoning his age discrimination claim. Because he failed to brief issues concerning his state law claims, we treat them as abandoned as well. *See Huckabay v. Moore*, 142 F.3d 233, 238 n.2 (5th Cir. 1998).

firing him because he was disabled.[2]

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability" by, among other things, terminating the individual's employment.  42 U.S.C. § 12112(a).  Because Delaval offers only circumstantial evidence to prove his claim, we apply the *McDonnell Douglas* burden-shifting framework.  *See LHC Grp.*, 773 F.3d at 694 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under this framework, an employee must show: (1) "he has a disability"; (2) "he was qualified for the job"; and (3) "he was subject to an adverse employment decision on account of his disability."  *Id.* at 697.  Once an employee has established his *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for" the adverse employment action.  *Id.* at 694.  The employee must then present evidence that the articulated reason is pretextual.  *Id.*  We apply a "motivating factor" test, which provides that "discrimination need not be the sole reason for the adverse employment decision . . . [so long as it] actually play[s] a role in the employer's decision making process and ha[s] a determinative influence on the outcome."  *Id.* at 702 (alterations in original).

Here, the district court granted summary judgment in favor of PTech because Delaval did not present any evidence that his impairments "substantially limit[ed] one or more major life activities," and because Delaval failed to rebut PTech's legitimate, non-discriminatory reason for firing him.

---

[2] Delaval also argues in a footnote in his initial brief that PTech "'regarded' him" as disabled.  *See* 42 U.S.C. § 12102(1)(C) ("The term 'disability' [can also] mean[] . . . being regarded as having such an impairment . . . .").  Arguments in a footnote are "insufficiently addressed in the body of the brief" and are therefore waived.  *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003).  Regardless, we need not decide whether Delaval was regarded as disabled because PTech articulated a legitimate, nondiscriminatory reason for firing him that Delaval failed to rebut.

No. 15-20471

We address the district court's latter conclusion only.[3]

The evidence in the record is scant, but PTech asserts the evidence shows the company has consistently stated an entirely lawful reason for dismissing Delaval: he violated the company's attendance policy. This is supported by Edwards's deposition testimony and the written termination notice PTech issued to Delaval. Delaval admitted in his deposition that he received a copy of the employee handbook and knew about the attendance policy.

Delaval, though, claimed in district court that he had been in constant contact with PTech between March 18 and 25. On appeal, he points to his deposition testimony supporting that contention and the e-mail exchange with Dallas. Delaval asserts that the e-mails prove PTech knew about his health problems and gave him permission to be away from work. PTech responds that Delaval was unable to provide any information during his deposition about whom he spoke to between March 18 and 25 and when those communications occurred. Regardless, PTech argues, the evidence in the record does not indicate that Delaval's termination occurred for discriminatory reasons.

In response to a motion for summary judgment, an employee must present "substantial evidence" that the employer's legitimate, nondiscriminatory reason for termination is pretextual. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015). Pretext is established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *See Laxton*

---

[3] The district court determined that a detailed affidavit submitted by Delaval about his health problems did not establish an issue of material fact regarding whether his impairments "substantially limit[ed him in] one or more major life activities." *See* 42 U.S.C. § 12102(1)(A). The 2008 amendment to the ADA, however, instructs a court to focus on whether the employer "complied with [its] obligations," and not on determining whether an employee is disabled. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). Because we affirm the district court on other grounds, we need not decide if Delaval provided enough evidence of a disability to survive summary judgment.

*v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).  Delaval does not contend he was treated differently than any other employee.  Further, while the e-mails between Dallas and Delaval may raise a fact question about whether any of Delaval's absences were authorized, they do not indicate that PTech's stated reason for firing Delaval was a pretext.  "Management does not have to make proper decisions, only non-discriminatory ones."  *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).  While Delaval may have believed he suffered discrimination, there is no evidence that such a belief was reasonable.  A "subjective belief of discrimination . . . cannot be the basis of judicial relief."  *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995).  Summary judgment was properly granted to PTech on Delaval's disability discrimination claim.

## II.    *Reasonable Accommodation*

We now turn to Delaval's failure-to-accommodate claim.[4]   The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ."  42 U.S.C. § 12112(b)(5)(A).  "An employee who needs an accommodation . . . has the responsibility of informing [his] employer."  *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).  Special words, like "reasonable accommodation," need not be uttered, but the employee "must explain that the [proposed] adjustment in working conditions . . . is for a medical condition-related reason . . . ."  *Id.*  Once an accommodation is requested, an employer must engage in the "interactive process," or a flexible

---

[4] Again, we assume without deciding that Delaval has established an issue of material fact regarding whether he is ADA disabled.

dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation. *Id.* An employer that fails to engage in the interactive process in good faith violates the ADA. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). Where the breakdown "is traceable to the employee," though, there is no violation. *Id.*

In the present case, without providing any notice to Delaval, the district court granted PTech *sua sponte* summary judgment on Delaval's failure-to-accommodate claim. The court held that even if Delaval was disabled, he never asked for an accommodation because permission to take medical tests and indefinite leave are not reasonable accommodations.

Delaval first argues that the district court erred in granting summary judgment where PTech's motion did not address that claim. Rule 56(a) contemplates a filed motion, but a district court may grant summary judgment without a motion provided the party opposed has notice. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1397–98 (5th Cir. 1994). Where a district court fails to provide notice, the error is considered harmless if the party opposed "has no additional evidence anyway or if . . . the appellate court evaluates all of the . . . additional evidence and finds no genuine issue of material fact." *Id.* at 1398. Delaval did not file a motion for reconsideration below, nor has he described in briefing on appeal any additional evidence that should have been considered by the district court or explained why additional discovery was necessary. Accordingly, the district court's failure to provide notice was harmless.

On the merits, Delaval again leans on the e-mail exchange between him and Dallas. That conversation, Delaval asserts, shows that he requested — and was granted — an accommodation in the form of a limited amount of time off for medical testing. Delaval contends that terminating his employment constituted a withdrawal of that accommodation, which violated the ADA.

No. 15-20471

PTech, however, argues that, at best, the evidence shows only that Delaval asked permission to be away from work for one day (March 17). Even if this amounts to an accommodation request, PTech contends that by failing to make contact with anyone at the company during his week-long absence, Delaval stymied the interactive process. Regardless, PTech posits, Delaval requested indefinite leave, which is not a reasonable accommodation.

Both parties are correct in some sense. Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave. *See Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759–60 (5th Cir. 1996) (indefinite leave); U.S. EQUAL EMP'T OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: REASONABLE ACCOMMODATION AND UNDUE HARDSHIP UNDER THE AMERICANS WITH DISABILITIES ACT (2002), 2002 WL 31994335, at *14–17 (paid or unpaid leave). We decline to decide whether Delaval requested a reasonable accommodation, as disputed facts are involved. Instead, we assume that the interactive process was triggered and affirm summary judgment in favor of PTech by concluding that Delaval fatally hindered that process. *See Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001) (authorizing affirmance "on any ground supported by the record, even if it is different from that relied on by the district court").

In its Enforcement Guidance, the EEOC provides that "[a]n employer may require an employee to provide documentation . . . sufficient to substantiate" the limitation that allegedly requires an accommodation. U.S. EQUAL EMP'T OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS OF EMPLOYEES UNDER THE AMERICANS WITH DISABILITIES ACT (2000), 2000 WL 33407181, at *10. "[T]he employer need not take the employee's word for it that [he] . . . has an illness that may require special accommodation." *EEOC v. Prevo's Family Mkt., Inc.*,

135 F.3d 1089, 1094–95 (6th Cir. 1998).  Where an employee refuses to provide such documentation, we have held that he causes a breakdown in the interactive process that may preclude an employer's liability.  *See Griffin*, 661 F.3d at 225.

In his deposition, Edwards testified that he asked Delaval to produce proof of his whereabouts during his week-long absence, but Delaval never came forward with so much as a doctor's note.  Delaval does not deny that PTech asked him for a doctor's note, but he attempts to create a fact question about whether he turned over relevant medical documents by citing his deposition testimony that he gave PTech "all the test results, copies of the arm bands, [and] prescriptions."  The thin record, though, contains only one medical document Delaval attached to his response to PTech's summary judgment motion.  The document, a diagnosis from one of Delaval's doctors, was created almost one month after Delaval was fired.

When asked during oral argument about the lack of relevant medical documentation, Delaval's counsel said his adversary's assertion below was that Delaval was fired because he failed to show up for work or call any of his supervisors, not because he failed to provide PTech with proof of his whereabouts during his week-long absence.  Delaval's counsel said he had no notice that any documentation submitted to PTech was "insufficient," and that he would have approached summary judgment and appeal "differently" had he known that was PTech's position.

In its motion before the district court, however, PTech contended Edwards provided Delaval a chance to preserve his job if he would submit a doctor's note, but Delaval never did.  The district court's opinion, moreover, states that "Delaval has not produced a doctor's note or report specifying the tests he took or his condition during his absence; he has not shown that he was unable to work, much less report [to work]."  Although PTech's argument and

the district court's finding were in relation to Delaval's disability discrimination claim, they are just as relevant to Delaval's allegation that PTech failed to accommodate him. Delaval did not attach any relevant medical documents disputing PTech's position to his opposition to summary judgment, file a motion for reconsideration below, or rebut the district court's finding on appeal with anything but his own testimony. We conclude that there was adequate notice that the lack of medical evidence was a key issue here, and that Delaval simply failed to rebut PTech's contention that it never received a doctor's note or other relevant documents.

In sum, PTech was acting lawfully in asking Delaval to turn over documentation corroborating his contention that he was undergoing medical testing during his week-long absence. *See generally Griffin*, 661 F.3d at 225. Based on the record evidence before us, a reasonable juror could only conclude that Delaval caused a breakdown in the interactive process by failing to provide the documentation requested. *See id.* Summary judgment was properly granted in PTech's favor on Delaval's failure-to-accommodate claim.

AFFIRMED.