## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

————

No. 18-60361

————

JAMES BENNY JACKSON,

Plaintiff–Appellant,

v.

BLUE MOUNTAIN PRODUCTION COMPANY,

Defendant–Appellee.

————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:16-CV-189

————

Before CLEMENT, OWEN, and HO, Circuit Judges.

PER CURIAM:*

James Benny Jackson worked for Blue Mountain Production Company in the same position for fifteen years. After he experienced breathing problems, he took medical leave and ultimately retired. He then sued his former employer under the Americans with Disabilities Act for failure to accommodate a known disability and for failure to engage in the interactive process. The district court granted summary judgment for Blue Mountain on

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

United States Court of Appeals
Fifth Circuit
**FILED**
February 21, 2019
Lyle W. Cayce
Clerk

1

the basis that Jackson does not have a disability.  We AFFIRM the grant of summary judgment, albeit on different grounds.

**I**

Blue Mountain Production Company (Blue Mountain) is a clay mining and processing facility, which primarily manufactures and processes absorbent clay that is ultimately sold as cat litter.  James Benny Jackson began working at Blue Mountain in 2000 as a chemical operator.  Jackson worked as a chemical operator throughout his fifteen years of employment.  Jackson was responsible for preparing products for packaging, including mixing dyes and other chemicals into the absorbent clay.  Both parties agree that dust is prevalent throughout the facility.

Jackson began having difficulty breathing in December 2014, though his exact symptoms and diagnosis are unclear.  In January 2015, Jackson sought medical treatment from Melinda Quinn, a family nurse practitioner.  Quinn diagnosed him with acute sinusitis.  When his condition did not improve after three months of treatment, Jackson requested a chest x-ray, which Quinn ordered.  According to the radiologist, the x-ray suggested that Jackson had Chronic Obstructive Pulmonary Disease (COPD).  At Jackson's request, Quinn referred him to a pulmonologist, Dr. Michael D. Wilons, for treatment.

In mid-April, before seeing Dr. Wilons, Jackson spoke with Rhonda Barnes, a member of Blue Mountain's Human Resources Department.  Barnes and Jackson discussed the possibility of Jackson taking Family and Medical Leave Act (FMLA) leave to recover, moving to another position, or retiring. Barnes told Jackson about a potential opening in the shipping department.  On April 16, there were two job postings for a shipping/receiving clerk—one for the day shift and one for the night shift.  Barnes told Jackson about the shipping clerk positions and allegedly opined that she didn't "see how [Jackson] could take that big a pay cut."  Jackson replied that he "would be willing to take a

significant pay cut if it meant . . . still being able to work and keep [his] benefits." Jackson did not apply for the position, though the parties do not agree on the reason. Jackson claims that there was a company policy that prevented him from applying for a position that would be considered a demotion. Barnes claimed that there never was such a policy and Jackson was free to apply. Jackson did not apply for any of these positions.

Jackson first saw Dr. Wilons on April 27, 2015. Pulmonary studies showed that he had some air flow obstructions that may be reversible. Because Jackson had not responded to treatments that should have helped his symptoms, Dr. Wilons suggested Jackson go on medical leave for six to eight weeks. Jackson requested and went on medical leave the same day. Jackson spoke with Barnes who immediately approved the leave and required Jackson to submit the appropriate paperwork. Dr. Wilons signed FMLA paperwork and transmitted it to Blue Mountain. The FMLA form signed by Dr. Wilons indicated that Jackson "needs to be out of dusty environment to get control" of his symptoms and his symptoms were "most likely related to the dust in his work environment."

Jackson returned to Dr. Wilons exactly one month after his first visit and his breathing had significantly improved. Dr. Wilons was optimistic about treatment and suggested that they begin reducing Jackson's medications. Jackson did not see Dr. Wilons again until July 15, 2015. Dr. Wilons was concerned that when Jackson returned to work at Blue Mountain he could be repeatedly exposed to dust and chemicals that could re-trigger his breathing issues. Nonetheless, Dr. Wilons did not inform Blue Mountain of any restrictions on Jackson's ability to work. Jackson's breathing problems were under control, but he still used a long-acting inhaler and a rescue inhaler.

After leaving Dr. Wilons's office, Jackson called Blue Mountain and spoke to Barnes. According to Jackson, he asked if there were any job

No. 18-60361

openings, and after he was told that there were none decided to retire rather than return to his position as a chemical operator. According to Barnes, Jackson simply told her that he was going to retire. Whatever the conversation, there is no question that Jackson did not return to work and instead retired.

However, when Blue Mountain processed his retirement application it determined that he could not draw retirement benefits. Jackson apparently did not work sufficient hours in two of his fifteen years to qualify for full retirement credit in those years. In September 2015, Blue Mountain offered to let Jackson return to service to qualify for retirement benefits. However, according to Jackson the only job available to him was his former position as a chemical operator. Blue Mountain claims that they did not discuss what positions were available, and that in any event Jackson's former position was already filled. According to Blue Mountain, Jackson was only 0.05 of a working year short of qualifying for retirement benefits. However, Jackson would have to work at least 1,000 hours to receive any retirement credit. Jackson refused and did not return to work.

There were open positions at Blue Mountain between September and December 2015. There were forklift operator job postings on October 1, October 19, and December 15. There is no evidence that Jackson was ever told about any forklift operator position, and they were eventually filled.

Jackson filed a charge of discrimination with the EEOC, and it issued Jackson a right-to-sue notice. Jackson initiated this lawsuit in the United States District Court for the Northern District of Mississippi. The district court granted summary judgment in favor of Blue Mountain on the ground that Jackson does not have a disability within the meaning of the Americans with Disabilities Act (ADA). Jackson appeals.

4

No. 18-60361

## II

The district court found as a threshold matter that Jackson was not disabled, so it declined to address whether Blue Mountain failed to accommodate or failed to engage in the interactive process. Jackson argues that a reasonable jury could conclude that he is substantially limited in his ability to breathe and therefore that the district court erred when it found that he is not disabled as a matter of law.

A grant of summary judgment is reviewed de novo and is proper "if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[1] If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute of material fact exists and summary judgment is precluded.[2] Facts and evidence are viewed "in the light most favorable to the non-moving party."[3]

The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."[4] "An employee who needs an accommodation . . . has the responsibility of informing [his] employer."[5] "[T]he employee 'must explain that the [proposed] adjustment in working conditions . . . is for a medical condition-related reason'" but is not required to use magic words like

---

[1] *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting FED. R. CIV. P. 56(a)).

[2] *Id.* (quoting *Royal v. CCC &R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013)).

[3] *Id.* (quoting *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013)).

[4] 42 U.S.C. § 12112(b)(5)(A).

[5] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (alteration in original) (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009)).

"reasonable accommodation."[6]   Once an accommodation is requested, the employer must engage in an "interactive process" with the employee with "the goal of finding an appropriate accommodation for the limitation."[7]   "An employer that fails to engage in the interactive process in good faith violates the ADA."[8]  If, however, the breakdown in the interactive process is "traceable to the employee," there is no violation.[9]   Jackson brings two related claims under the ADA: he claims that Blue Mountain both failed to accommodate his disability and failed to engage in the interactive process.   A necessary prerequisite for either claim is that the employee is disabled within the meaning of the ADA.[10]

## A

For the purposes of this appeal, we assume without deciding that a reasonable jury could conclude that Jackson has a disability under the ADA. Because no reasonable jury could find that Blue Mountain failed to make reasonable accommodations, we affirm on alternative grounds.

To prevail on a failure to accommodate claim, a plaintiff must show "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."[11]   "An employee who needs an accommodation because of a disability has the responsibility of informing [his] employer."[12]   If the

---

[6] *Id.* (second alteration in original) (quoting *Chevron Phillips*, 570 F.3d at 621).

[7] *Id.* (citing *Chevron Phillips*, 570 F.3d at 621).

[8] *Id.* (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011)).

[9] *Id.* (quoting *Griffin*, 661 F.3d at 224).

[10] *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (citing *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996)).

[11] *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

[12] *Chevron Phillips*, 570 F.3d at 621.

No. 18-60361

"disability, resulting limitations, and necessary reasonable accommodations[] are not open, obvious, and apparent to the employer, the initial burden rests upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations."[13]  "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation."[14]  If the requested accommodation is to be transferred to another position, "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform."[15]  "A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously."[16]

Jackson argues that the ADA prohibited Blue Mountain from "forcing Jackson into retirement 'without first seeking to place him in a vacant job where the disability will not' preclude his working."  Prior to going on FMLA leave, Jackson discussed three possibilities with Barnes in April 2015: taking medical leave, retiring, and coming back to work in a different position.  Barnes testified that she told Jackson he could apply for vacant shipping clerk positions.  He did not apply for the vacant positions, though the parties dispute the reason.  Then, when he was cleared to return to work, he asked if "anything changed as far as any job openings" and was told there were no openings.  Instead of returning to work and seeking other accommodations, Jackson chose to retire, thereby ending the interactive process and making it impossible to know if Blue Mountain would have provided a reasonable accommodation.

---

[13] *Griffin*, 661 F.3d at 224 (quoting *Chevron Phillips*, 570 F.3d at 621).

[14] *Id.* (quoting *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)).

[15] *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citing *Forman v. Babcock & Wilcox Co.*,117 F.3d 800, 810 & n.14 (5th Cir. 1997)).

[16] *Griffin*, 661 F.3d at 224 (quoting *Jenkins*, 487 F.3d at 316).

When an employee voluntarily retires, he terminates the interactive process, making summary judgment appropriate because it becomes difficult to discern what measures may have been taken had accommodation discussions continued.[17] We have confronted similar situations before in which the employee terminated his employment and then sued under the ADA for failure to accommodate. For example, in *EEOC v. Agro Distribution, LLC*, the employee did not go to work on a day that he was asked to perform the difficult and unpleasant task of loading barrels.[18] He was terminated and then argued that his employer should have provided a reasonable accommodation to allow him to perform the work.[19] Affirming summary judgment for the employer, we noted "[t]he reasonable accommodation analysis is hindered because [the plaintiff] did not show up for work. Any discussion of the accommodations that might have been provided or denied is mere speculation."[20] Similarly, in *Griffin v. United Parcel Service,* the employer refused to provide the employee's requested accommodation, and the employee retired two weeks after returning to work from medical leave.[21] We held that based on the employee's decision to retire without identifying other reasonable accommodations, no reasonable jury could conclude based on the existing evidence that the employer would not have made some accommodation.[22]

Here too, Jackson terminated his employment before the interactive process had concluded. Jackson never returned to work after his FMLA leave, making it impossible for a jury to determine whether Blue Mountain would have provided a reasonable accommodation. To be sure, Jackson did not

---

[17] *Id.* at 225.
[18] 555 F.3d at 466.
[19] *Id.*
[20] *Id.* at 471.
[21] 661 F.3d at 225.
[22] *Id.*

receive the accommodation of being transferred to a shipping clerk or forklift operator position. However, the record shows that Blue Mountain did not deny Jackson a transfer or the opportunity to transfer to a vacant position. Jackson testified that he and Barnes talked about the possibility that "if [he] could come back, if [he] could work in a different position." This does not show that he requested a transfer and was denied an accommodation in April. Instead, it shows that he and Blue Mountain contemplated the possibility of transferring to another position after taking medical leave. Jackson never applied for a transfer and even acknowledged in his deposition that Blue Mountain made exceptions to the policy that he says prevented him from applying. Yet he did not request an exception. When he spoke with Barnes again in July after being cleared to return to work, she truthfully told Jackson that there were no vacant positions that he could transfer to. Nor has Jackson provided any evidence that Blue Mountain should have known that a forklift operator position would be available two weeks later.[23] Even in the light most favorable to Jackson, this evidence shows that Blue Mountain did not deny Jackson a reasonable accommodation when he chose to retire in July. By retiring he unilaterally terminated the interactive process, depriving Blue Mountain of the opportunity to discuss or provide other accommodations, including transfer to a position that might become vacant in the future. No reasonable jury could conclude that Blue Mountain would not have provided some reasonable accommodation.

---

[23] *Cf.* 29 C.F.R. § 1630, App. ("Employers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time. . . . [If t]he employer, however, knows that an equivalent position for which the individual is qualified, will become vacant next week . . . , the employer should reassign the individual to the position when it becomes available.").

No. 18-60361

Nor could a reasonable jury agree with Jackson's characterization that he was forced to retire. Blue Mountain offered to allow him to return to service in September 2015, which Jackson refused. Even if Jackson was correct that he would have had to return to his previous position, he has not shown that Blue Mountain would not have provided an accommodation if he returned to that position. "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation."[24] Without any discussion of possible accommodations upon return to service, a jury could only speculate about the outcome of the process. Accordingly, Jackson cannot show a failure to make reasonable accommodations.

## B

Jackson's claim that Blue Mountain did not engage in a good-faith interactive process similarly fails. To prevail on the claim of failure to engage in the interactive process, the employee must show that the employer's unwillingness to engage in the process led to a failure to reasonably accommodate the employee.[25] When the breakdown is "traceable to the employee," there is no violation.[26] Here, the breakdown is traceable to Jackson's decision to retire.[27] For the same reasons that retiring prevents a jury from determining that Blue Mountain would not provide a reasonable accommodation, Jackson's decision to retire caused a breakdown in the interactive process. Accordingly, this claim fails as a matter of law.

---

[24] *Griffin*, 661 F.3d at 224 (quoting *Agro Distrib.*, 555 F.3d at 471).

[25] *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (citing *Griffin* 661 F.3d at 224); *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

[26] *Delaval*, 824 F.3d at 481 (quoting *Griffin*, 661 F.3d at 224).

[27] *See Griffin* 661 F.3d at 225 ("Where an employee terminates the interactive process by voluntarily retiring, it is difficult to discern what measures may have been taken had accommodation discussions continued.").

No. 18-60361

## III

Jackson contends that granting summary judgment violated his Seventh Amendment right to a trial by jury, arguing that right entitles him to have a jury decide whether particular conduct violated or conformed to the applicable legal standard. These contentions are meritless. "No constitutional right to a trial exists when after notice and a reasonable opportunity a party fails to make the rule-required demonstration that some dispute of material fact exists which a trial could resolve."[28]

*     *     *

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

---

[28] *Oglesby v. Terminal Transp. Co.*, 543 F.2d 1111, 1113 (5th Cir. 1976) (per curiam).

11