# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50053

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2018

Lyle W. Cayce
Clerk

HEATHER TRAUTMAN,

Plaintiff-Appellant,

v.

TIME WARNER CABLE TEXAS, L.L.C.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:15-CV-1049

Before DAVIS, COSTA, and OLDHAM, Circuit Judges.

PER CURIAM:[*]

Time Warner Cable Texas, L.L.C. ("Time Warner") fired Heather Trautman for not coming to work. Trautman sued Time Warner under the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and a related state statute. The district court granted Time Warner summary judgment on all claims. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50053

I.

Time Warner hired Trautman in October 2012 and fired her in April 2015. Approximately eight months into her thirty-month tenure, Trautman began submitting various accommodation and leave requests. Some were protected by federal and state employment laws. Others were not. This much is undisputed: Trautman missed a staggering amount of work.

A.

Trautman became pregnant in approximately March 2013. In June 2013, Trautman experienced periodic dizzy spells and submitted a formal ADA accommodation request that she be allowed to lie down at work. Time Warner determined her request did not qualify for an ADA accommodation. It nonetheless granted her request and found locations in its office in Austin, Texas where Trautman could lie down as needed.

A few months later, while she was still pregnant, Trautman got anxious driving from work to her home in Kyle, Texas. She stopped her car, rested for twenty minutes, then drove home. Trautman's obstetrician advised her that she had experienced a panic attack and recommended rest and avoiding stressful situations. A few weeks later, Trautman experienced another panic attack when driving home from work. This time, her obstetrician suggested leaving work early to avoid driving in the heavy traffic.

Trautman did not submit an ADA accommodation request; she instead asked her supervisor for a temporary modification to her work schedule. The request presented a challenge to Time Warner because Trautman's job required her to be in the office to interact with other members of her team at certain times. Nonetheless, Trautman's supervisor agreed to her request. So Trautman left the office between 2:00 and 3:00 p.m. and worked from home for the rest of the day.

2

No. 18-50053

Trautman's daughter was born in December 2013. Trautman then took FMLA leave until March 2014.[1] After exhausting her FMLA leave for 2014, Trautman asked her then-supervisor, Chris Graham, if she could temporarily work from home because she was struggling to transition her child to bottle-feeding. Graham requested a doctor's note but agreed to Trautman's request. Trautman ultimately worked from home for the remainder of 2014.

In December 2014, a new supervisor, Adrienne Greth, requested that Trautman resume working from the office on January 12, 2015. Greth was concerned Trautman was not performing necessary job duties that required her to be in the office. Trautman, however, did not want to work her normal 8:00 a.m. to 5:00 p.m. office schedule. She asked Greth for a modified schedule that would allow her to work from home in the afternoons. But Greth insisted she needed Trautman to work eight hours a day from the office unless she had a doctor's note and a formal accommodation approved by the Human Resources ("HR") department.

B.

On December 12, 2014, Trautman submitted an ADA accommodation request to Time Warner's HR department, requesting that she be allowed to work from 7:00 a.m. to 2:00 p.m. in the office and the remaining hours from home. The request stated that Trautman's condition imposed "no limitations for the function of [her] job duties" but that she wanted to work from home in the afternoons "to avoid anxiety and panic attacks." Trautman's family physician described Trautman's functional limitations as "anxiety/panic attacks related to traffic/driving" and identified driving as the only "major life

---

[1] Under the FMLA, qualifying employees are entitled to a total of 12 weeks of unpaid leave to care for a newborn child or for other qualifying exigencies during any 12-month period. 29 U.S.C. § 2612(a)(1).

3

No. 18-50053

activity" her condition impaired.  He also indicated, however, that Trautman's condition "decreased [her] concentration" and suggested she be allowed to leave the office at 2:00 p.m. so she could "avoid heavy traffic."

Time Warner denied that specific accommodation request, explaining: "The request and accommodation are not related to an essential function of [Trautman's] job," and Trautman's position "requires her to work from the office during normal business hours."  But Time Warner offered to adjust Trautman's schedule from 8:00 a.m. to 5:00 p.m. to 7:00 a.m. to 4:00 p.m. so she could leave the office earlier.

Trautman did not try leaving the office at 4:00 p.m. to see if that addressed her anxiety.  She instead insisted that leaving at 4:00 p.m. would not solve the problem and submitted a new letter from her physician.  This second letter, however, did not provide additional information or explain why allowing Trautman to leave at 4:00 p.m. was insufficient.  Trautman again asked permission to leave the office at 2:00 p.m. and work from home in the afternoons.  Acknowledging that 2:00 to 3:00 p.m. was usually a busy time for her department, she alternatively offered to leave the office even earlier—at 11:00 a.m.—so that she would be available to work during that busy period from home.

Time Warner reiterated it needed Trautman to work all her hours from the office, but that it would allow Trautman to adjust her schedule so that she could leave at 4:00 p.m.  Trautman again refused to try this option.  Trautman also declined to investigate public transportation or ride-sharing options that would allow her to avoid driving in heavy traffic.  Nor did Trautman propose other alternatives to help minimize her anxiety, such as taking breaks in the afternoon when she felt anxious or modifying her work environment so she would not see traffic building outside the office.  Rather than continuing the

4

No. 18-50053

dialogue about possible ADA accommodations, Trautman sought a different route to leave the office at 2:00 p.m.—intermittent FMLA leave that would end her work day early.

C.

On January 14, 2015, Trautman began submitting requests for intermittent FMLA leave to Time Warner's third-party administrator for FMLA requests, Sedgwick Claims Management Services, Inc. ("Sedgwick"). The following day, she began leaving work early. Sedgwick transmitted the FMLA leave requests to Time Warner and gave Time Warner access to real-time information about whether the leave requests were approved or denied through Sedgwick's web portal. Trautman also had access to the portal to check the status of her FMLA leave requests. If she disagreed with a denial of one of her FMLA leave requests, Trautman could appeal to Time Warner's HR department.

On February 5 and February 11, 2015, Trautman submitted paperwork to Sedgwick to support her leave requests. Her family physician stated:

- Trautman has "severe driving phobia at times of high traffic volume";
- The condition causes "episodic flare-ups" of "severe anxiety/panic during and in anticipation of driv[ing] in high traffic" that requires Trautman to miss work; and
- Trautman would need to leave the office no later than 2:00 p.m. when she experienced a flare up.

Despite Sedgwick's request for clarification, Trautman's physician failed to indicate clearly how many episodes Trautman experienced per week and how long these episodes lasted.

On February 20, 2015, Sedgwick sent Trautman a letter ("First Certification Letter"), approving her for one hour of FMLA leave per week for

5

No. 18-50053

six months (from January 14, 2015 through July 13, 2015). The same day, Sedgwick denied Trautman's requested FMLA leave for any absences in January and February that exceeded this approved FMLA amount. Trautman did not appeal those denials. Sedgwick also told Trautman how to submit a new certification form if her circumstances changed and if she wished to extend her leave beyond six months.

On February 24, 2015, Greth issued Trautman a written warning for numerous attendance violations. Throughout January and February, Trautman had missed work for reasons unrelated to her FMLA requests. Before issuing the warning, Greth checked Sedgwick's web portal to make sure she was not counting FMLA-approved leave against Trautman. Greth detailed the gravity of the attendance issues in the warning, noting that out of "the last 60 days (35 working days), [Trautman has] been out of the office a total of 19 work days and ha[s] been late and left early on numerous occasions. This is a total of 179 hours which equates to approximately 64% of working hours since the beginning of the year." Greth warned that "failure to demonstrate immediate and sustained improvement may result in further disciplinary action up to and including dismissal."

Nevertheless, Trautman left work early that very day—despite being out of personal time, sick time, and vacation time. ROA.340. And she called in sick for the three days after that. Greth issued Trautman a final written warning on March 2, 2015. Once again, Greth logged onto Sedgwick's web portal to confirm the absences were not FMLA-approved before issuing the final warning. Time Warner's HR manager also logged into the portal to make sure no FMLA-approved absences were included. The final warning noted Trautman had been absent for 22 days (200 hours) since the beginning of the year and that another violation could result in termination.

6

No. 18-50053

That same day, March 2, 2015, Trautman submitted a new doctor's note to request an increase in the frequency and duration of her FMLA leave to one and a half hours daily. Sedgwick informed Trautman it could update the frequency and duration of her FMLA leave to be effective on the day it received the updated paperwork—March 2, 2015—not before. On March 20, 2015, Sedgwick sent Trautman notice of a new FMLA certification ("Second Certification Letter") that extended the expiration date of her leave to August 27, 2015. It also increased the hours and number of days she could take FMLA leave per week from one hour of FMLA leave a week to two hours of leave five times a week. Sedgwick sent a letter to Greth regarding the new certification, which Greth forwarded to Time Warner's HR manager.

After March 20, 2015, Trautman took her increased amount of intermittent FMLA leave. She also received approval to take some additional time off or work from home on March 24, April 3, and April 6. Shortly before her shift began on April 8, Trautman informed Greth (via voicemail and text message) that she did not think she could make it to work due to childcare issues and expressed concern that she was out of sick days. Greth texted Trautman back, stating Trautman may have accrued some sick leave if she hadn't used any leave since February. Ultimately, Trautman never showed up for work on April 8. Time Warner fired her the next day.

The termination notice explained Trautman "fail[ed] to meet the expectations that were outlined to [her] regarding [her] absences and in accordance with Time Warner Cable's corrective action policy." The notice also listed all of Trautman's unapproved absences since the beginning of 2015: January 5 (8 hours); January 12 (8 hours); January 13 (8 hours); January 14 (8 hours); January 15 (0.5 hours); January 16 (1.5 hours); January 20 (6 hours); January 21 (0.5 hours); January 22 (1.5 hours); January 26 (0.5 hours);

7

No. 18-50053

January 27 (1.5 hours); January 28 (1.5 hours); January 29 (8 hours); January 30 (8 hours); February 2 (8 hours); February 3 (8 hours); February 4 (8 hours); February 5 (8 hours); February 6 (8 hours); February 9 (0.5 hours); February 10 (3 hours); February 11 (1.5 hours); February 12 (8 hours); February 13 (8 hours); February 16 (7 hours); February 17 (8 hours); February 19 (8 hours); February 20 (8 hours); February 23 (8 hours); February 24 (8 hours); February 25 (8 hours); February 26 (8 hours); February 27 (8 hours), and April 8 (8 hours).  ROA.356.

Trautman sued Time Warner for violations of the FMLA, the ADA, and related provisions of state law.  Time Warner filed a motion for summary judgment, which the district court granted.  This appeal followed.[2]

## II.

We review de novo the entry of summary judgment.  *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 763 (5th Cir. 2016).  The Court must "draw all reasonable inferences in favor of the nonmovant, and ask whether the evidence in the summary judgment record is such that no reasonable juror could find in favor of the nonmovant."  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995).  Applying this standard, no reasonable juror could find Time Warner violated the FMLA or ADA by firing Trautman or by refusing to provide her requested accommodation.

## A.

We start with the FMLA retaliation claim.  The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this

---

[2] On appeal, Trautman failed to contest the district court's judgment on her FMLA interference claim and her various claims under Texas state law.  Trautman therefore forfeited those claims.  *See Norris v. Causey*, 869 F.3d 360, 373–74 n.10 (5th Cir. 2017).

subchapter." 29 U.S.C. § 2615(a)(2). To establish a prima facie case of FMLA retaliation, Trautman must show, *inter alia*, she "suffered an adverse employment decision . . . because [she] took FMLA leave." *Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (per curiam) (internal quotation marks and citation omitted). Trautman argues she satisfied that standard by producing "direct evidence" of retaliation. We disagree. We further hold Trautman's indirect or circumstantial evidence does not create an inference of FMLA retaliation.

1.

We "typically rel[y] on the familiar *McDonnell-Douglas* burden shifting framework to determine whether an employer discharged an employee in retaliation for participating in FMLA-protected activities." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). Under that framework, "once the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* And "[i]f the employer succeeds in doing so, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Id.* at 332–33.

Trautman, however, attempts to establish her claim with direct evidence. If a plaintiff "presents direct evidence of discrimination," then "the *McDonnell Douglas* test is inapplicable." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). When evidence is ambiguous such that an inference is required to show discriminatory intent, the evidence is at

No. 18-50053

best circumstantial, not direct. *See Lazarou v. Miss. State Univ.*, 549 F. App'x 275, 280 (5th Cir. 2013) (per curiam); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002); *see also Patten v. Wal-Mart Stores E., Inc.*, 300 F.3d 21, 25 (1st Cir. 2002).

Trautman insists her termination notice is direct evidence of retaliation because it lists 9.5 hours of FMLA-approved absences in January and February of 2015.[3] That argument, of course, assumes those specific 9.5 hours were approved. But even Trautman concedes that, on February 20, 2015, they were denied. To overcome this obstacle, she argues the Second Certification Letter retroactively approved the 9.5 hours of leave at issue. It is true the Second Certification Letter approved Trautman's request that she be allowed to take a greater amount of intermittent FMLA leave. But it says nothing at all about retroactively approving absences that had been previously denied. To the contrary, Sedgwick specifically notified Trautman the increased leave amount would be effective on March 2, 2015—that is, *after* the key 9.5 hours of leave. And, even after sending the Second Certification Letter, Sedgwick continued to report those 9.5 hours as denied on its web portal. Accordingly, the termination notice does not include FMLA-covered absences and is not direct evidence of retaliation.

---

[3] Trautman claims the following partial absences were retroactively approved as FMLA leave by Sedgwick and were included in her termination notice: January 15 (0.5 hours), January 16 (1.5 hours), January 21 (0.5 hours), January 22 (1.5 hours), January 26 (0.5 hours), January 27 (1.5 hours), January 28 (1.5 hours), February 9 (0.5 hours), and February 11 (1.5 hours). Because Trautman was initially approved to take one hour of FMLA leave a week, Sedgwick approved Trautman for one hour of FMLA leave on January 15, one hour on January 21, one hour on January 26, and one hour on February 9, 2018. It is undisputed that these FMLA-approved hours were not included in the termination notice; the termination notice includes only the additional thirty minutes Trautman was absent on these days.

No. 18-50053

Deposition testimony bolsters that result. Trautman argues Greth's deposition testimony evinces a subjective understanding that the Second Certification Letter retroactively approved her FMLA leave.[4] But nothing in the deposition transcript shows Greth believed the *specific* 9.5 hours of leave were covered *at the time* she disciplined Trautman for her attendance violations and made the termination decision. To the contrary, Greth testified she checked Sedgwick's web portal to make sure she was *not* counting FMLA-approved leave against Trautman. Moreover, Greth didn't approve or deny Trautman's FMLA leave requests—Sedgwick did—and Trautman never appealed those denials. Greth simply relied on those denials and terminated Trautman for them. Trautman thus has no direct evidence of FMLA retaliation.[5]

---

[4] Greth looked at the Second Certification Letter in her deposition and surmised Sedgwick approved Trautman back to January 14, 2015, for up to two hours of FMLA leave a day.

[5] It is possible the *McDonnell Douglas* framework also does not apply when "the employee concedes that discrimination was not the *sole* reason for her discharge, but argues that discrimination was *a* motivating factor in her termination." *Richardson*, 434 F.3d at 333. In such a case, *Richardson* states the mixed-motive framework applies. The mixed-motive framework allows an employee to carry its burden under the third step by "creat[ing] a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or—and herein lies the modifying distinction—(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Id.* In her briefing before this Court, however, Trautman does not adequately argue that the mixed-motive framework applies, despite the fact that the district court (by adopting the magistrate judge's opinion) expressly applied the *McDonnell Douglas* framework. Instead, Trautman argued that *McDonnell Douglas*'s pretext analysis did not apply because she presented direct evidence that Time Warner retaliated against her. Trautman therefore forfeited any argument that the mixed-motive framework applies. *See Norris*, 869 F.3d at 373–74 n.10. Moreover, even applying the mixed-motive framework, Trautman cannot establish that her FMLA-protected leave was a motivating factor in Time Warner's decision to fire her. Accordingly, we need not decide whether the mixed-motive framework remains a viable method to establish FMLA-retaliation claims following the Supreme Court's decisions in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), and *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389–90 (5th Cir. 2013).

No. 18-50053

2.

Because Trautman has presented no direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies to her circumstantial evidence of FMLA retaliation. *See Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (applying *McDonnell Douglas* to FMLA retaliation claim). Again, Trautman's claim fails.

We need not decide whether Trautman established her prima facie case because, even if she had, Time Warner had an obvious and non-pretextual reason for firing her—namely, excessive absenteeism. First, as should go without saying, an employee's failure to show up for work is a legitimate reason for firing her. *See Bell v. Dallas Cty.*, 432 F. App'x 330, 334 (5th Cir. 2011) (per curiam) ("Contrary to [the employee's] assertion, the evidence demonstrates that the [employer] terminated [him] for violating the attendance policy, not because he used his FMLA leave."); *Powers v. Woodlands Religious Cmty. Inc.*, 323 F. App'x 300, 302 (5th Cir. 2009) (per curiam) ("[The employer's] stated reason for [the employee's] termination—absenteeism—is a legitimate nondiscriminatory reason for its decision."); *Hypes ex rel. Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998) (per curiam) (recognizing a record of excessive absences is a legitimate, nondiscriminatory reason to fire an employee). Trautman accrued unexcused absences totaling over 200 hours from January 1, 2015 to April 9, 2015. Moreover, Time Warner provided evidence that Trautman was treated similarly to other employees who were disciplined for attendance violations. In fact, under Time Warner's attendance policy, employees may be terminated if they exceed 112 hours of unexcused

absences in a rolling 12-month period—far fewer absences than Trautman incurred in less than four months.[6]

Second, Trautman cannot "show by a preponderance of the evidence" that Time Warner's articulated reason—excessive absenteeism—was a pretext for retaliation. *Richardson*, 434 F.3d at 332–33; *see Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) ("An employee seeking to show pretext must rebut each discrete reason proffered by the employer."). "Pretext is established 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence."'" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

Trautman does not dispute she was absent on the listed days or that Time Warner fired her because of her absences. Instead, she argues a jury could find her FMLA leave counted as a "negative factor" in Time Warner's decision to fire her because (she argues) 9.5 hours of her absences were FMLA-covered. *See* 29 C.F.R. § 825.220(c). As we explained above, however, the summary judgment evidence demonstrates those hours were *not* covered. *See supra* Part II.A.1.

In all events, even subtracting those 9.5 hours, Trautman's absences still far exceeded the limits in Time Warner's attendance policy. *See Bell*, 432 F. App'x at 334 & n.5 (concluding summary judgment was proper for the defendant when employee's absences "still qualifie[d] as 'excessive' under the [defendant's] attendance policy" if absences arguably covered by the FMLA were ignored); *cf. Delaval*, 824 F.3d at 480 (reasoning that "a fact question"

---

[6] Although Trautman was exempt from the bargaining unit that agreed to this attendance policy, managers monitored the attendance of exempt employees like Trautman and could use the attendance policy as a guide for how to address attendance issues.

about whether an employee's absences were authorized did not show the employer's articulated reason for firing the employee—violating the attendance policy—was pretext, because managers "'do[] not have to make proper decisions, only non-discriminatory ones'" (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005))). Trautman offers no evidence she would not have been fired if those 9.5 hours were not included on the termination notice. She also fails to provide evidence that any employee who had a similarly dismal attendance record was treated more favorably than her. *Compare Delaval*, 824 F.3d at 480 (concluding employee failed to show pretext, in part, because employee could not show "he was treated differently than any other employee"), *with Carmona v. Sw. Airlines Co.,* 604 F.3d 848, 862 (5th Cir. 2010) (concluding there was a fact question on whether the employer's articulated reason was pretextual when similarly situated employees were treated more favorably).

Moreover, Time Warner has a record of granting Trautman's numerous accommodation and FMLA leave requests back to 2013, even when it was not required to do so by law. That record further prevents Trautman from showing Time Warner used excessive absenteeism as a pretextual justification for discrimination. *See Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 212 (5th Cir. 2015) (per curiam) (considering employer's past conduct of approving FMLA leave as evidence the proffered reason for firing the employee was not pretext).

Accordingly, we affirm the entry of summary judgment on Trautman's FMLA retaliation claim.

No. 18-50053

B.

We now turn to Trautman's two ADA claims: (1) discriminatory termination and (2) denial of reasonable accommodations. Summary judgment was proper on both.

1.

Trautman's discriminatory termination claim fails for several reasons, including one we already discussed above: her failure to show Time Warner's proffered, legitimate reason for her termination was pretext.

Trautman argues Time Warner fired her because it regarded her as disabled—that is, because Time Warner perceived her as impaired based on her need for FMLA leave.[7]   But the *McDonnell Douglas* burden-shifting framework applies to this ADA discriminatory termination claim as it did to the FMLA claim. *See Eli Lilly & Co.*, 820 F.3d at 766 (concluding the same pretext analysis applies to FMLA claims as to ADA claims). Accordingly, for the same reasons articulated above, even assuming Trautman established a prima facie case of discrimination, she cannot show the proffered reason for her termination—excessive absenteeism—was a pretext for discrimination.

2.

Finally, Trautman's failure-to-accommodate claim fails. Under the ADA, as amended by the ADA Amendments Act of 2008, "a plaintiff in this circuit 'must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by

---

[7] Trautman's discriminatory termination claim is based on her argument that the termination notice included 9.5 hours of FMLA-approved leave. She does not appear to argue her other absences were necessitated by her alleged impairment. To the extent she makes that argument in this Court, she has already forfeited it by not presenting it to the district court. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009).

15

the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.'" *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (emphasis omitted) (quoting *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 740 F.3d 450, 452 (5th Cir. 2013)).

We need not decide whether Trautman was a qualified individual with a disability because, even assuming she was, she cannot establish that Time Warner refused a reasonable accommodation. When an employee "requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *See EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). But that is not what happened here. Trautman requested an accommodation that would allow her to work from home after 2:00 p.m. When Time Warner denied this specific request, Trautman's response was to make an even more aggressive request that she be allowed to leave work at 11:00 a.m. That's not the stuff of flexible, interactive discussions.

In contrast, Time Warner demonstrated flexibility by offering to adjust Trautman's schedule so she could work a full work day and leave at 4:00 p.m. And Trautman never tried that accommodation. Nor did Trautman investigate ride-sharing options, request additional breaks in the afternoons to help mitigate her anxiety, or explore any other accommodation. She instead unilaterally decided to end her workday at 2:00 p.m. Neither the ADA nor the 2008 amendments to the ADA permits an employee to leave work early and then sue her employer for being unreasonable.

\*    \*    \*

The judgment of the district court is AFFIRMED.