# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 21, 2023

Lyle W. Cayce
Clerk

————————

No. 22-50064

————————

CLINT MUECK,

*Plaintiff—Appellant*,

*versus*

LA GRANGE ACQUISITIONS, L.P.,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-801

_____

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:

In 2019, Plaintiff-Appellant Clint Mueck received his third citation for Driving While Intoxicated ("DWI"). As a term of his probation, Mueck, an alcoholic, was required to attend weekly substance abuse classes. Some of these classes conflicted with shifts that Mueck was scheduled to work as an operator at a plant owned by Defendant-Appellee La Grange Acquisitions, L.P. Mueck informed his supervisors that he was an alcoholic and that several of the court-ordered substance abuse classes would conflict with his scheduled shifts. When Mueck was unable to find coverage for these shifts,

La Grange, citing this scheduling conflict, terminated Mueck. After exhausting his administrative remedies, Mueck sued La Grange under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq.*, for intentional discrimination, failure to accommodate, and retaliation. The district court granted summary judgment in favor of La Grange on all three claims. Mueck appeals. We AFFIRM, but our analysis takes into account significant statutory revisions.

## I. Background

Defendant La Grange Acquisition L.P. ("La Grange") operates a natural gas processing plant, the Fashing gas plant, in Karnes City, Texas. In February 2015, Plaintiff Clint Mueck started working as an operator at the plant. As an operator, Mueck was responsible for checking pipeline equipment and recording an hourly log of various plant indicators, including pressures, readings, flows, and temperatures. Operators at the plant worked a seven-day-on, seven-day-off shift schedule, alternating between day and night shifts. Under this schedule, operators would work a 12-hour day shift (6:00 a.m. to 6:00 p.m.) for seven days, take seven days off, work a 12-hour night shift (6:00 p.m. to 6:00 a.m.), and then take another seven days off before restarting the rotation.

During the relevant time period, Mueck reported directly to Kevin Pawelek, the Plant Supervisor, who reported to Jerry Frausto, the Manager of Operations. Frausto in turn reported to Ricky Bonewald, the Director of Operations, who in turn reported to Chad Ingalls, the Vice President of Operations. Additionally, Raymond De La Vega, Senior Manager of Human Resources, provided human resources support to the plant.

Mueck is an alcoholic. Mueck, who first started drinking while at college in the late 1990s, described his alcoholism as mainly consisting of binge drinking, that is, he has difficulty controlling his drinking once he starts.

No. 22-50064

By his own account, while employed by La Grange, Mueck would have, at most, one to two drinks in the evening on days when he worked and his drinking never prevented him from working. Mueck, however, drank excessively whenever he was off duty.[1] On a typical day off, Mueck would consume twelve to eighteen beers, along with vodka drinks, until he passed out. To treat his resulting hangover and mental fog, Mueck would begin drinking again. This cycle would repeat until Mueck had to return to work.

When in the middle of one of his drinking binges, Mueck would neglect basic elements of self-care. He would not shower, brush his teeth, clean his house, or keep up with any other chores. Similarly, his ability to concentrate, think clearly, and make decisions was greatly impaired during a binge. Mueck tried to hide his drinking problem from everyone, including friends, family, and his primary care physician, to the detriment of his relationships with others. In Mueck's own words, drinking was his priority and his cravings made it difficult to focus on anything else.

Mueck's drinking also led to legal consequences, including a lengthy criminal history for alcohol-related crimes. In 1997, while in college, Mueck was cited for Driving Under the Influence ("DUI") and placed into a pretrial diversion program. In 2017, while employed by La Grange, he received a second citation for Driving While Intoxicated ("DWI") and was placed on pretrial diversion. In March and June 2018, he received citations for public intoxication. Mueck was placed on deferred adjudication for one of these citations, while the other citation was dismissed for lack of evidence. Due to these citations, Mueck's pretrial diversion for the 2017 DWI was revoked. Finally, on March 3, 2019, while still under probation for the 2017 DWI for

---

[1] Indeed, Mueck attested that his drinking problem worsened while he was on medical leave for a knee injury because he did not have to sober up for work.

which his pretrial diversion had been revoked, Mueck was cited for a third DWI.

On March 6, 2019, Mueck disclosed to Pawelek his most recent DWI, as well the fact that he had a prior DUI and public intoxication charges. At the meeting, Mueck promised to keep Pawelek apprised of his legal situation. According to Mueck, he told Pawelek that he was an alcoholic and had a drinking problem, that he wanted to turn his life around, and that he was going to seek help. Mueck also claims that, around the same time, he told Frausto that he was an alcoholic and had a drinking issue. Pawelek, however, claims that Mueck never informed him that he was an alcoholic, and Bonewald and De La Vega similarly deny being informed by Pawelek or Frausto that Mueck had an alcohol problem.[2]

That morning, Frausto emailed De La Vega and Bonewald (with Pawelek copied on the email) a summary of a prior discussion about Mueck's situation. Frausto noted that—as far as he was aware—this was Mueck's second DWI offense and that Mueck had hired a lawyer to help him deal with the most recent offense. Frausto further wrote that Mueck had reached out to the Employee Assistance Program ("EAP"), a confidential hotline that is designed to provide employees assistance with a variety of personal problems. Mueck states that while he did call the hotline, he did not end up receiving help from the EAP.

That spring, Mueck continued to work at the plant. During this period, Mueck started taking independent steps to address his alcoholism.

―――――――――――――――――――――

[2] Bonewald and De La Vega were forwarded an email originally sent from Pawelek to Frausto on May 17, 2019, in which Pawelek reported that Mueck was 60 days sober and had been attending Alcoholics Anonymous meetings four to five times a week. De La Vega explained, however, he did not feel that he could speculate, on these facts, that Mueck was an alcoholic or disabled.

He began attending Alcoholics Anonymous ("AA") meetings four to five times per week and, on May 9, 2019, disclosed to his primary care physician that he needed help with his drinking. His doctor prescribed medication to help with his cravings and advised Mueck to seek counseling and a support group. As of October 2021, Mueck was still attending AA meetings multiple days per week.

Meanwhile, Mueck's legal proceedings were ongoing. Because of his most recent DWI, as well as the public intoxication charges, the State moved to revoke Mueck's probation for the 2017 DWI. To avoid revocation of his probation, on May 16, 2019, Mueck agreed to an extension of his probation. This extension came with certain conditions, including a requirement that Mueck carry a personal breathalyzer to work and use it three times per day, and that Mueck install a breathalyzer in his truck. Mueck was also ordered to participate in the 81st District Court Substance Abuse Intensive Outpatient Program.

On May 17, 2019, Mueck notified Pawelek of these conditions and provided Pawelek with a copy of the court order. Mueck and Pawelek briefly spoke about the breathalyzer requirement and Mueck's participation in the substance abuse program, details about which Mueck promised to provide shortly. Following the meeting, Pawelek wrote to Frausto (who then forwarded the email to Bonewald and De La Vega) that he had asked Mueck how he was doing, to which Mueck had responded that he had been sober for sixty days and was attending AA meetings four to five times per week. Mueck claims that he also told Pawelek that he needed the substance abuse program because his drinking was affecting every aspect of his life, which had fallen apart.

Soon after this meeting, Mueck received more details about the substance abuse program. The program would consist of weekly one-on-one

sessions with a substance abuse counselor as well as weekly group sessions. This group class included other individuals referred through the court system as well as private paying clients. Although the individual counseling sessions could be scheduled at Mueck's discretion, the group sessions met every Monday from 6 p.m. to 8 p.m. The class, for which Mueck needed to plan for around an hour of travel time, was intended to run for three months.

Mueck's participation in this program would impact the end of some of his day shifts and the beginning of four of his night shifts over the relevant three-month period. Mueck independently arranged for a coworker to cover the days on which he would need to leave early from his day shift to attend the class but could not find coverage for the night shifts for which he would have to arrive late. On May 24, Pawelek, who told Mueck that the opportunity for overtime had to be offered to everyone, sent out an email to operators not on Mueck's rotation asking if anyone would be willing to trade shifts for the necessary dates. No one responded to the email. Pawelek confirmed that the co-worker Mueck had identified was still willing to cover on days when Mueck would have to leave early to make his class.

Although Mueck and Pawelek had resolved the scheduling conflict for his day shifts, he still needed coverage for his night shifts. Pawelek stated he was willing to help facilitate a voluntary shift swap but would not force another employee to cover for Mueck. On May 28, Pawelek notified Frausto, Bonewald, and De La Vega that no one had volunteered to cover for Mueck when he was to work the night shift. La Grange suspended Mueck for a week while it reviewed the situation. Frausto called Mueck to notify him of the suspension, telling him only that he was suspended "pending investigation."

Neither Pawelek nor any other La Grange employee discussed options other than shift swaps to resolve the conflict. According to Bonewald, "it was [Mueck's] job to find coverage," especially where he was not planning to take

vacation or sick leave. Mueck, however, claims that he was never told that he could use vacation time or time under the company's "Personal Leave" policy to attend the classes. Bonewald confirmed that La Grange would have accommodated Mueck if he had requested time off as "vacation," but reiterated that Mueck did not want to use his vacation time—an assertion Mueck denies. Bonewald also explained that had La Grange's EAP recommended that Mueck attend substance-abuse classes, La Grange would have covered his shifts.

Moreover, although La Grange would approve voluntary shift swaps, Pawelek explained that employer-mandated shift swaps at the plant were uncommon and were typically done only on a permanent basis. Nonpermanent swaps could result in extended hours for employees already working twelve-hour shifts, leading to safety concerns and overtime costs to the business. That said, according to Mueck, La Grange would regularly find coverage for other employees, sometimes on short notice. One of the lead operator's job functions was to substitute for absent operators, and Pawelek noted that one potential solution would have been for him to fill in for Mueck.

Ultimately, Bonewald recommended to Ingalls that Mueck's employment be terminated. After consulting with human resources, Ingalls decided to terminate Mueck. On June 4, Mueck was informed of his termination and told that the decision was based on the conflict between the substance-abuse classes and his shift schedule.

After exhausting his administrative remedies through the EEOC, Mueck sued La Grange under the ADA for intentional discrimination, failure to provide reasonable accommodation, and retaliation. Following the close of discovery, La Grange moved for summary judgment on each of these claims. The district court granted the motion in its entirety, first finding that Mueck failed to provide sufficient evidence from which a jury could conclude that

his alcoholism was a disability under the ADA as required by his intentional discrimination and failure-to-accommodate claims. Additionally, the district court held that Mueck had failed to show that he requested an accommodation as required for both his failure-to-accommodate claim and retaliation claim. Mueck appeals.

## II. Discussion

We review a district court's grant of summary judgment *de novo*. *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 (5th Cir. 2009). Summary judgment is proper when the moving party can demonstrate that, viewing the evidence in the light most favorable to the non-moving party, there is no issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, we may affirm on "any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010)).

Mueck raises four issues on appeal: (1) whether, as a threshold matter, the district court erred in finding that he failed to produce evidence that his alcoholism is a disability under the ADA, (2) whether the district court therefore erred in granting summary judgment as to his intentional discrimination claim, (3) whether the district court erred in granting summary judgment as to his failure-to-accommodate claim, including on the alternate basis that he had not requested an accommodation, and (4) whether the district court similarly erred in granting summary judgment as to his

retaliation claim on the ground that he had not engaged in a protected activity. We address each in turn.

## A. Disability

First, Mueck contends that the district court erred in finding that he did not present evidence showing that he is disabled under the ADA.[3]

The ADA defines "disability" as, with respect to an individual, "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Merely having an impairment" is not enough to qualify as disabled under the ADA—a plaintiff "also need[s] to demonstrate that the impairment substantially limits a major life activity." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009). The ADA defines a "major life activity" as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," 42 U.S.C. § 12102(2)(A), as well as "the operation of a major bodily function, including . . . neurological [and] brain . . . functions," *id.* § 12102(2)(B).

For a limitation on a major life activity to be substantial, an individual must be "unable to perform a major life activity that the average person in the general population can perform, or . . . be significantly restricted in the ability to perform it." *Chevron Phillips*, 570 F.3d at 614. Determining whether

---

[3] To succeed on both his intentional discrimination and failure-to-accommodate claims, Mueck must show that he has a disability under the ADA. *See, e.g. EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (explaining that to establish a *prima facie* case of discrimination under the ADA, a plaintiff must first demonstrate that he has a disability); *Feist v. La. Dep't of Just.*, 730 F.3d 450, 452 (5th Cir. 2013) (explaining that to prevail on a failure-to-accommodate claim, a plaintiff must first establish that he is a "qualified individual with a disability").

a plaintiff has a disability therefore requires an individualized assessment of the impact of the impairment on an individual's major life activities.[4] *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 223 (5th Cir. 2011) ("Neither the Supreme Court nor this court has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies." (cleaned up)).

Courts initially construed the definition of disability narrowly, particularly in the context of determining whether an impairment substantially limited a major life activity. *See* Chai R. Feldblum, *Definition of Disability Under Federal Anti-Discrimination Law: What Happened? Why? And What Can We Do About It?*, 21 Berkeley J. Empl. & Lab. L. 91, 93 (2000). In response, Congress enacted the ADA Amendments Act of 2008 ("ADAAA") with the goal of "reinstating a broad scope of protection to be available under the ADA." Pub. L. No. 110-325, § 2(a), 122 Stat. 3554; *see generally Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) ("[The 2008] amendments 'make it easier for people with disabilities to obtain protection under the ADA.'" (quoting 29 C.F.R. § 1630.1(c)(4))). Put another way, Congress directed that courts, in assessing whether an impairment substantially limits a major life activity, "interpret[] and appl[y]" the term "substantially limits" "to require a degree of functional limitation that is lower than the standard . . . applied prior to the ADAAA."[5] 29 C.F.R. § 1630.2(j)(1)(iv).

---

[4] The EEOC itself does not recognize any *per se* disabilities, although it does recognize that "the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage" under the ADA. 29 C.F.R. § 1630.2(j)(3).

[5] *See also* Alex B. Long, *Introducing the New and Improved Americans with Disabilities Act: Assessing the ADA Amendments Act of 2008*, 103 Nw. L. Rev. Colloquy 217, 218-

Additionally, the ADAAA explicitly provided that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."42 U.S.C. § 12102(4)(D). Consequently, courts have recognized numerous episodic conditions—including depression, post-traumatic stress disorder, and other mental health conditions where an individual may experience flare-ups—as disabilities. *See, e.g.*, *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 854 (6th Cir. 2018) (depression and severe separation anxiety).

Relying primarily on case law that failed to account for the impact of the ADAAA, however, the district court held that Mueck had failed to establish that his alcoholism was an impairment which substantially limited a major life activity, in large part because the impairments Mueck suffered during a drinking binge were short-term and not permanent.[6] Specifically, in reaching this conclusion, the district court turned to *Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997), a case in which we found that a plaintiff could not show that his alcoholism rose to the level of a disability. *Id.* at 314-317

---

23 (2008) (explaining that the ADAAA rejected much of the restrictive view courts had taken of the "substantially limits" requirement and expanded the list of major life activities that may be considered).

[6] The district court limited its discussion to Mueck's specific factual circumstances—it did not adopt a blanket rule that alcoholism can *never* be a disability under the ADA. This was proper—as we and other circuits have recognized, both before and after the ADAAA, alcoholism can, without a doubt, rise to the level of a disability. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 n.9 (5th Cir. 1997) ("This is not to say that an alcoholic can never demonstrate a substantially limiting impairment."); *Sullivan v. Neiman Marcus Grp., Inc.*, 358 F.3d 110, 114-15 (1st Cir. 2004) (recognizing that "there is no question that alcoholism is an impairment under the ADA" that may, if it substantially limits a major life activity, qualify as a disability) (cleaned up); *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017) (noting that the ADA "treat[s] alcoholism as an impairment that can form the basis of a disability discrimination suit"); *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1185 (6th Cir. 1997) ("There is no dispute that alcoholism is a disability within the protection of the ADA.").

(discussing why, based on the evidence presented, the plaintiff's alcoholism did not make him a qualified individual with a disability under the ADA). The district court treated *Burch* as controlling both as to the governing law and its applicability to the facts presented by Mueck. We find, however, that *Burch* is distinguishable on both grounds.

To begin, the district court cited *Burch* for the proposition that "[p]ermanency, not frequency, is the touchstone of a substantially limiting impairment." *Id.* at 316. In *Burch*, we noted that even if the plaintiff's underlying alcoholism was a permanent condition, and even though the plaintiff's bouts of inebriation were frequent, the impairments caused by his drinking were temporary. *Id.* Accordingly, we "rejected [the] attempt[] to transform [a] temporary affliction[] into [a] qualifying disabilit[y]." *Id.*

Yet, critically, *Burch* predates the ADAAA. And not only did the ADAAA generally seek to make it easier for plaintiffs to establish that they have a disability, but it plainly stated that an "episodic" impairment—that is, an impairment that is not always active—can still qualify as a disability. *See* 42 U.S.C. § 12102(4)(D). Other circuits have recognized that the ADAAA directly abrogated prior case law requiring that an impairment be "permanent" or "long term" to qualify as a disability. *See, e.g.*, *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1222-26 (9th Cir. 2022) (holding that the district court erred in relying on case law and regulations that failed to account for the ADAAA to hold that an impairment is not substantially limiting unless it involves permanent or long-term effects); *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92-94 (2d Cir. 2021) (joining other circuits in recognizing that the ADAAA overrode previous case law indicating that temporary impairments could not qualify as disabilities under the ADA); *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330 (4th Cir. 2014) (noting that while the district court's ruling that an injury was not a disability because it was "temporary" was "entirely reasonable" under prior case law, the

plaintiff nonetheless "unquestionably alleged a 'disability' under the ADAAA").

We have not yet explicitly joined other circuits in repudiating the "permanent or long-term" requirement. Although the issue was raised in *Moore v. Centralized Management Services, LLC*, 843 F. App'x 575 (5th Cir. 2021), we expressly declined to address whether the district court had erred in determining that the plaintiff failed to show that his alcoholism was a disability under the ADA because his drinking was episodic, not permanent, *Moore v. Centralized Mgmt. Servs., LLC*, No. 19-1592, 2020 WL 972711, at *4 (E.D. La. Feb. 28, 2020), *reconsideration denied*, 2020 WL 2037191 (E.D. La. Apr. 28, 2020); 843 F. App'x at 578-79. Specifically, because we found that the district court had not erred in finding that the plaintiff was terminated for poor performance, not on account of his alcoholism, we determined that we did not need to decide whether the plaintiff's alcoholism was a disability. *Moore*, 843 F. App'x at 579. And while we have approvingly cited precedent that requires courts to consider the "permanent or long-term impact" of an impairment when assessing whether it "substantially limits" a major life activity in other cases decided after the ADAAA, *see, e.g., Milton v. Texas Dep't of Crim. Just.*, 707 F.3d 570, 573 (5th Cir. 2013); *Agro Distr.*, 555 F.3d at 470; *Chevron Phillips*, 570 F.3d at 615, these cases applied *pre*-ADAAA case law and are therefore inapposite, *see Milton*, 707 F.3d at 573 n.2 (explaining that it applied pre-ADAAA law because the events giving rise to the plaintiff's claim arose before the enactment of the ADAAA and the ADAAA does not apply retroactively); *Agro Distr.*, 555 F.3d at 469 n.8 (same); *Chevron Phillips*, 570 F.3d at 619 (relying on a prior version of 29 C.F.R. § 1630.2(j) and pre-ADAAA precedent).

We now take the opportunity to acknowledge, as our sister circuits have, that, following the ADAAA's passage, an impairment need not be "permanent or long-term" to qualify as a disability.

In the alternative, the district court viewed *Burch* as standing for the proposition that the mere fact that an individual is unable to perform activities of daily living while inebriated or hungover is not enough to demonstrate that the individual has a substantially limiting impairment. On this point, however, *Burch* can be distinguished on its facts. In *Burch*, the plaintiff's primary evidence as to the limitations imposed by his alcoholism was his own testimony that that his "ability to walk, talk, think, and sleep were affected when he drank too much," and that he "had hangovers in the morning that affected his memory."[7] 119 F.3d at 316. This testimony, however, showed only that the plaintiff had suffered the "natural result of overindulgence," namely "the *temporary* impairment of senses, dulled reactions, and the prospect of a restless sleep followed by an unpleasant morning." *Id.* In other words, the plaintiff suffered from the same ill effects of too much alcohol as any individual who drank too much.

Mueck, however—unlike the plaintiff in *Burch*—provided evidence demonstrating that the "the effects of his alcoholism-induced inebriation were qualitatively different than those achieved by an overindulging social drinker." *Id.* When he drank, he drank excessively, either to the point of passing out or to where he was too sick to drink any more. Mueck further testified that, during these binges, his major life activities of thinking,

---

[7] The plaintiff in *Burch* also pointed to testimony from his treating physician that alcoholics as a class, not the plaintiff individually, were disabled under the ADA. 119 F.3d at 315. However, as discussed, the ADA requires an individualized inquiry. Fatally, in *Burch*, the only testimony specific to the plaintiff from the physician concerned the plaintiff's ability to function without limitation, that is, the physician "acknowledged that Burch's status as a recovering alcoholic did not affect his ability to walk, sit, hear, work, or participate in any 'usual activities.'" *Id.* at 315 n.8. Additionally, the *Burch* plaintiff pointed to the fact that he was voluntarily admitted to a hospital to treat his alcoholism as evidence that his alcoholism substantially limited a major life activity. *Id.* at 312, 316. In rejecting this argument, we noted that the "mere existence of a hospital stay" was not enough, on its own, to demonstrate that an impairment is substantially limiting. *Id.* at 317.

concentrating, and caring for himself would be substantially impacted—he would not shower, brush his teeth, clean, eat healthily, or follow a consistent sleep schedule, and would often drink to the point of unconsciousness.[8] *See, e.g.*, *Chevron Phillips*, 570 F.3d at 617  (finding that a plaintiff had submitted sufficient evidence to demonstrate that she was substantially limited in the major life activity of caring for herself where she attested that she often did not shower for days, was unable to shop for food, cook, or even zip up her clothes). Put simply, the level of impairment described by Mueck far exceeds that which is typically experienced by a casual drinker, even one who overindulges.

---

[8] As an alternative ground on which to grant summary judgment in favor of La Grange, the district court stated that Mueck had failed to specify in his complaint which specific major life activities were impacted by his alcoholism. Relying on *Mora v. Univ. of Tex. Ws. Med. Ctr.*, 469 F. App'x 295, 297 (5th Cir. 2012), the district court found that this failure was fatal to his claims. *Mora*, however, was decided in the context of a motion to dismiss, not a motion for summary judgment. *Id.* at 297. And typically a deficiency in the pleadings results in the dismissal of the case—and an opportunity to amend—not a decision on the merits in favor of the defendant. *See, e.g., Great Plains Trust Co. v. Morgan Stanley*, 313 F.3d 305, 329 (5th Cir. 2002) (noting that, "unless it is clear that the defects are incurable" or the plaintiffs are "unwilling or unable to amend in a manner that will avoid dismissal," courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies" in an attempt to "decide cases on the merits rather than on the sufficiency of pleadings"). Moreover, in his response to the motion for summary judgment, Mueck both articulated the major life activities in which he was substantially limited and provided evidence demonstrating that he was so limited. We thus find that any deficiency in the complaint did not warrant summary judgment on the merits in favor of La Grange.

To the extent that the district court's judgment for La Grange depended on the observation that Mueck did not present evidence showing that his alcoholism impacted his major life activity of "work," we note that Mueck himself never asserted that his impacted major life activity was his work.  Nor must a condition interfere with an individual's job in order to qualify as a disability. *See, e.g., Cannon*, 813 F.3d at 591 n.3 (explaining that the fact that a plaintiff could perform work tasks "[did] not undermine the evidence indicating that his injury substantially limit[ed] his ability to lift, which [was] all that [was] required to establish a disability").

Moreover, these binges were of substantial duration. As Mueck explained, he would not simply overindulge for a night at a time—rather, he would drink non-stop whenever he was off work, which could be a full week (or, as when he was on FMLA leave, months) at a time. In *Burch*, however, there was no evidence that the plaintiff (who worked an office job), engaged in such lengthy or debilitating binges. *See* 119 F.3d at 310 (describing how the plaintiff in *Burch*, although he would drink heavily in the evenings, would still report to work the next morning, albeit with a hangover).

Other out-of-circuit cases to which La Grange cites are inapposite. For instance, La Grange cites *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665 (7th Cir. 2011), in which the Seventh Circuit affirmed summary judgment in favor of the defendant on the basis that the plaintiff could not show that her alcoholism substantially limited major life activities. In that case, however, the plaintiff "presented no evidence that her alcohol problem substantially limited her activities at home" and "insisted that her alcohol problem did not affect her work performance." *Id.* at 670. Yet here, while Mueck claims that his alcoholism did not affect his work, he does provide evidence that he was substantially limited whenever he was off the clock. *Cullen v. Verizon Communications*, No. 14-464, 2015 WL 4508711 (W.D.N.Y. July 24, 2015), is similarly unhelpful for La Grange, as Mueck has done more than vaguely assert that his alcoholism "merely 'affected' certain abilities." *Id.* at *3. He has described, in detail, the exact ways in which his alcoholism impacted his life.

Accordingly, Mueck has put forth evidence raising a triable issue of fact as to whether his alcoholism amounts to a disability. Therefore, the district court erred in granting summary judgment to La Grange on both the intentional-discrimination and failure-to-accommodate claims on the basis that Mueck had failed to establish that he was a qualified individual with a disability under the ADA.

## B. Intentional Discrimination

Having determined that Mueck's alcoholism may qualify as a disability under the ADA, we address whether Mueck has raised a triable issue of fact as to his intentional discrimination claim.[9]

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability" by employers. 42 U.S.C. § 12112(a). An employee bringing a claim for disability discrimination under the ADA "may either present direct evidence that []he was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Mueck does not argue that he has presented direct evidence of discrimination: accordingly, the *McDonnell Douglas* burden-shifting framework applies.

Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 479 (5th Cir. 2016). "To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582 (5th Cir. 2020) (citation omitted). Once he has done so, "the burden shifts to the employer to 'articulate a legitimate, nondiscriminatory reason' for its actions," after which the plaintiff bears "the burden to prove that the employer's explanation was a pretext for discrimination." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir.

---

[9] The district court granted summary judgment to La Grange on this claim solely because it found that Mueck failed to establish that he had a disability. We may, however, affirm on "any ground supported by the record, even if it is different from that relied on by the district court." *Reed*, 701 F.3d at 438.

2021) (citation omitted). To carry the burden of showing pretext, "[t]he plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). A plaintiff may demonstrate pretext by presenting "evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 527 (5th Cir. 2022) (internal quotation marks and citation omitted).

We have already found that Mueck has met his burden as to the existence of a disability, and there is no dispute that Mueck was both qualified for his position and that the termination of his employment constituted an adverse employment action. Mueck, however, must also show that he was terminated *on account of* his disability—his alcoholism—to establish his *prima facie* case. For judicial economy, we assume without deciding that he has done so.

La Grange, however, has produced a legitimate, non-discriminatory reason for Mueck's termination: the conflict between his court-ordered substance abuse classes and his shift schedule. Mueck does not contest that this is a legitimate, non-discriminatory reason for an adverse action.

The burden therefore shifts to Mueck to establish that this legitimate, non-discriminatory reason is pretextual. Mueck contends that he has done so by providing evidence of disparate treatment—that is, evidence showing that he was treated differently, and worse, than non-disabled employees. Specifically, Mueck points to evidence showing that La Grange covered absences for other employees, even on short notice. For example, Mueck notes that a plant supervisor had filled in for him when he had to miss work due to a spider bite in 2017, and that the supervisor had covered for other employees (none of whom La Grange had reason to believe were alcoholics

or otherwise disabled) when they were ill. Mueck also claims, more generally, that La Grange would accommodate other operators who needed time off for a variety of reasons, including vacation, sickness, injury, doctor appointments, family issues, and drug testing, even when the request for leave was on short notice.

In the context of discrimination claims, "we [have] require[d] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (internal quotation marks omitted). Some of the examples Mueck provides are easily distinguishable from his own circumstances: employees who cannot come into work because of an unplanned and unavoidable absence—such as illness or injury—are not similarly situated to employees who will need to miss work on a known, regular basis in the future. And while Mueck contends that his situation is akin to an employee who requests time off to attend a doctor's appointment, he fails to proffer any evidence that such requests were actually made under comparable circumstances. For instance, Mueck does not provide any detail as to who made these coverage requests, how they went about requesting time off, when they requested time off, or how the request was handled. Instead, he simply asserts that coverage was granted. These details matter, however, because employees who have different work responsibilities or different supervisors are not considered "similarly situated." *Id.* at 259-60. In fact, La Grange has provided evidence that those similarly situated to Mueck—that is, other employees who were unable to make their shifts because of court sanctions—have *not* been granted coverage and have instead been disciplined and terminated.

Alternatively, Mueck argues that evidence in the record shows that "a discriminatory motive more likely motivated [La Grange's] decision." *Wallace*, 271 F.3d at 220 (international quotation marks omitted). First, he

points to Bonewald's admission that La Grange would have viewed Mueck's request for time off differently and found coverage had he sought time off on the recommendation of the EAP, as opposed to a court order. Similarly, Mueck notes that although La Grange now states that he could have taken the time off with his vacation, he was never informed that this was an option to cover his shifts.[10] According to Mueck, because La Grange admits that it would have found coverage had Mueck phrased his request differently, it necessarily admits that a shift-schedule conflict cannot be the real reason for his termination.

Yet this evidence does not create a triable issue of fact as to whether the given reason for his termination was pretextual, that is, "false or unworthy of credence." *LHC Grp.*, 773 F.3d at 702. Simply stated, nothing in the record supports such a finding. There is no dispute that, while La Grange may have been able to do more to find coverage for the shifts Mueck needed to miss, La Grange *did* attempt to coordinate coverage for him and, while partially successful, eventually these efforts failed. It was only at this point, when some of Mueck's shifts were left uncovered, that La Grange dismissed Mueck. Given this context, no reasonable jury could find that La Grange's legitimate, non-discriminatory reason—the shift conflict—for Mueck's suspension and termination was pretext for discrimination.

We therefore AFFIRM the district court's grant of summary judgment in favor of La Grange on Mueck's intentional discrimination claim.

---

[10] Bonewald appeared confused as to why Mueck did not explore this option, saying that he thought Mueck did not want to use his vacation time. Pawelek testified that he did not think that Mueck had sufficient vacation time to cover his missed shifts. Mueck disputes both accounts, stating that he had vacation time and would have used it had he known it was a possibility.

No. 22-50064

### C. Failure to Accommodate

We now address the district court's grant of summary judgment in favor of La Grange as to Mueck's failure-to-accommodate claim.

The ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim, a plaintiff "must show that (1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Jennings v. Towers Watson*, 11 F.4th 335, 343 (5th Cir. 2021) (internal quotation marks and citation omitted).

As a threshold matter, the employee who "needs an accommodation because of a disability has the responsibility of informing [his] employer." *Chevron Phillips*, 570 F.3d at 621; *see also Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) ("It is the plaintiff's burden to request reasonable accommodations."). Failure to request an accommodation, particularly where an employee's disability is not obvious, will doom a claim. *Clark*, 952 F.3d at 587 (holding that a plaintiff's failure-to-accommodate claim failed on a "fundamental level" where he did not request an accommodation); *see also Griffin*, 661 F.3d at 224 ("However, an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal interactive process' is traceable to the employee and not the employer." (internal quotation marks and citation omitted)). In making this request, "[s]pecial words, like 'reasonable accommodation,' need not be uttered, but the employee 'must explain that the [proposed] adjustment in working conditions . . . is for a medical condition-related

No. 22-50064

reason." *Delaval*, 824 F.3d at 481 (second and third alterations in original) (quoting *Chevron Phillips*, 570 F.3d at 621).

The district court found that Mueck had failed to present evidence showing that he had requested an accommodation for his disability of alcoholism. Mueck disagrees. In his view, he presented evidence demonstrating that, in his conversations with Pawelek, he generally acknowledged struggling with a medical condition (alcoholism) and needed time off to address that condition (via the court-ordered substance abuse classes). Thus, Mueck maintains that in ruling against him, the district court improperly imposed a "magic word" requirement.

The facts presented here, however, do not show that La Grange was informed by Mueck that his request for time off was for a disability. Rather, La Grange reasonably viewed his request as one for time off to deal with the legal consequences of his most recent DWI. Here, both of Mueck's discussions with Pawelek were set up to discuss his DWI and the associated court case. Indeed, the second meeting on May 17, 2019, specifically concerned the conditions of his probation. And these conditions included not just Mueck's court-ordered participation in the substance abuse program, but also breathalyzer requirements that posed a possible interference with his work.[11] This context matters. Mueck referred to his struggles with drinking only when discussing how criminal sanctions traceable to his drinking would impact his work. Indeed, Mueck himself confirmed that he had always met his work obligations, despite his alcoholism. We do not think it reasonable,

_____

[11] Specifically, Mueck was ordered to carry a personal breathalyzer that had a camera to capture an image when he blew into the device. Plant employees, however, were prohibited from taking photos inside the plant.

on these facts, to expect an employer to view Mueck's statements as him claiming to have a disability which required accommodation.

Moreover, Mueck would have needed to request time off regardless of whether he had a disability. Mueck maintains that the court-ordered nature of the substance abuse classes has no impact on the analysis, suggesting that, because the court-ordered counseling was intended to treat his underlying disability, any request for time off to attend must be understood as a requested accommodation. [12] But we cannot disregard the circumstances surrounding an employee's alleged request for accommodation when determining whether an employee made the requisite request. Here, no reasonable juror could have found that Mueck, by notifying La Grange that his court-ordered classes would conflict with his shift schedule and informing his supervisors that he was attempting to resolve this conflict by finding coverage, was requesting an accommodation for his disability of alcoholism.

We emphasize that this is not to say that Mueck's alcoholism is not a disability—we have already discussed, in detail, why Mueck has raised a triable issue of fact as to that matter. Instead, we find only that Mueck has not shown that he made his *employer aware* that his alcoholism was the reason why he was requesting accommodation.[13]

---

[12] We note that the EEOC, which has submitted an amicus brief in this appeal, appears to suggest that where a court orders counseling, as opposed to another condition of probation such as community service, employers must assume that, because the purpose of court-ordered substance abuse counseling is always to treat the underlying disability, any request to comply with such a court order is necessarily a request for an accommodation. We decline this broad invitation because Mueck did not convey to La Grange that the court-ordered counseling was a product of his disability.

[13] To the extent that Mueck contends that self-identifying as an alcoholic was enough, on its own, to put La Grange on notice that he was seeking an accommodation, we disagree. As discussed, an impairment (here, alcoholism) must substantially limit a major life activity to be considered a disability. An individual may identify as an alcoholic, or even

In the alternative, Mueck argues that, even if he did not clearly request an accommodation for a disability, because his statements raised the *possibility* that he could be requesting an accommodation, La Grange bore the burden of clarifying the nature of Mueck's request. Put another way, Mueck contends that La Grange failed to engage in the required interactive process by failing to ask follow-up questions about whether he was requesting an accommodation. *See Agro Distr., LLC*, 555 F.3d at 471 (noting that once a qualified employee requests a reasonable accommodation, "the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation"). But the duty to engage in the interactive process is only triggered *after* the employee has requested an accommodation. *Id.*; *Chevron Phillips*, 570 F.3d at 621.

To support his position, Mueck cites to several out-of-circuit cases for the proposition that an employer, when faced with an ambiguous request, bears the burden of confirming whether an employee has, in fact, requested an accommodation. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 507 (3d Cir. 2010) ("[C]ircumstances will sometimes require the employer to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." (quoting *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003))). These cases emphasize that the initial burden still rests upon the employee to put the employer on notice that they both have a disability and require some accommodation for it. *See Conneen v*, 334 F.3d at 332 (emphasizing that "circumstances must at least be sufficient to cause a

---

be clinically diagnosed as one, without that impairment substantially limiting a major life activity. *See, e.g., Ames*, 629 F.3d at 670 (noting that the plaintiff was unable to show that her alcoholism was an ADA disability where there was no evidence that her alcoholism substantially limited her activities at home or at work).

No. 22-50064

reasonable employer to make appropriate inquiries about the possible need for an accommodation").[14]

Furthermore, even accepting, without deciding, that Mueck's proposed burden-shifting framework applies, Mueck must initiate the dialogue. Here, the facts suggest only that a reasonable employer *might* have found that Mueck *might* have been seeking an accommodation for his disability. To hold that La Grange was required to determine whether Mueck had a disability and needed accommodation in this situation would place the *initial* burden of identifying an accommodation request on the employer, not the employee. We cannot find that Mueck's terse references to his struggles with drinking and self-identification as an alcoholic, made while discussing the legal implications of a recent DWI, were enough to place a legal responsibility on La Grange to probe whether Mueck was requesting a disability accommodation.

For the reasons discussed above, we AFFIRM the district court's grant of summary judgment as to Mueck's failure-to-accommodate claim.[15]

---

[14] Similarly, the EEOC cites to *EEOC v. Sears, Roebuck, & Co.*, 417 F.3d 789, 804 (7th Cir. 2005) for the proposition that if notice of a disability is "ambiguous" but nonetheless raises the possibility that the employee may need accommodation, the employer has the duty to ask for clarification. *Sears* addresses a situation where an employee has given notice "sufficient to notify the employer that the employee may have a disability that requires accommodation," but that "notice is ambiguous as to the precise nature of the disability or desired accommodation." *Id.* Like Mueck's cited cases, *Sears* makes clear, however, that the "initial duty" still requires that an employee "indicate to the employer that [he] has a disability and desires an accommodation." *Id.* at 804. Here, Mueck did not do so.

[15] Because we hold that Mueck failed to request a disability accommodation, we need not address the district court's alternative holding that his claim was barred by 42 U.S.C. § 12114(c), which states that an employer "may hold an employee who . . . is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the . . . alcoholism of such employee." *Id.* § 12114(c)(4). Nonetheless,

No. 22-50064

## D. Retaliation

Finally, Mueck challenges the district court's grant of summary judgment in favor of La Grange on his retaliation claim.

The ADA prohibits retaliation against an individual who "has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). As with the other claims under the ADA, a retaliation claim not supported by direct evidence is evaluated under the *McDonnell Douglas* burden-shifting framework. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). Accordingly, a plaintiff must first establish a *prima facie* case of unlawful retaliation, which requires a plaintiff to show that "(1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La. Dep't of Just.*, 730 F.3d 450, 454 (5th Cir. 2013) (citations omitted).

Mueck contends that he engaged in protected activity by requesting a reasonable accommodation for his alcoholism. *See Jenkins*, 487 F.3d at 316-17 (holding that the plaintiff had established a *prima facie* case for retaliation where he alleged that his employer retaliated against him by terminating him for requesting reasonable accommodations). Because we find that Mueck did

---

we take this opportunity to caution that § 12114(c) should not be read to bar accommodations, such as time off, for an alcoholic employee. Instead, § 12114(c) merely allows an employer to discipline or discharge an employee for workplace misconduct even if that misconduct is attributable to the employee's disability of alcoholism. *See, e.g.*, *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1139 n.18 (9th Cir. 2001) ("The text of the ADA authorizes discharges for misconduct or inadequate performance that may be caused by a 'disability' in only one category of cases—alcoholism and illegal drug use."); *see also McElwain v. Boeing Co.*, 244 F. Supp. 3d 1093, 1099 (W.D. Wash. 2017) (denying a failure-to-accommodate claim where the employee sought time off for his incarceration for a DUI and holding that while the employee's conviction may have been related to his alcoholism, the ADA did not require the employer to accommodate infractions of the law).

No. 22-50064

not request a reasonable accommodation for his disability, his retaliation claim must also fail.[16]

We thus AFFIRM the district court's grant of summary judgment as to Mueck's retaliation claim.

### III. Conclusion

For the foregoing reasons, we AFFIRM.

---

[16] We note that, even if we had found that Mueck requested an accommodation, his retaliation claim would fail for the same reason as his intentional discrimination claim: his failure to provide sufficient evidence from which a reasonable jury could find that La Grange's proffered legitimate, non-discriminatory reason for his termination—the shift conflict—was pretextual.